HARDY *v.* MINNEAPOLIS & ST. L. RY. Co. *et al.*

(*Circuit Court, D. Minnesota.* November 14, 1888.)

1. **NEGLIGENCE—PROVINCE OF COURT AND JURY.**
   In an action for negligence, where the evidence on the material issues is conflicting, the court will not set aside a verdict, though it would have been entirely satisfied if the result had been the other way.

2. **MASTER AND SERVANT—NEGLIGENCE OF VICE-PRINCIPAL.**
   M., defendants' yard-master, mounted the switch-engine, and, while acting as engineer, gave deceased directions to assist in uncoupling cars. The latter, while so employed, was run over and killed. *Held*, that the court properly refused an instruction that, while M. was acting as engineer, he was a fellow-servant of deceased, and defendant would not be liable for his acts as such. Though actually engaged as an engineer, he was none the less yard-master, and entitled to be obeyed in the work of making up trains.

3. **DEATH BY WRONGFUL ACT—ACTION—EVIDENCE.**
   In an action by the next of kin to recover damages for the negligent killing of the deceased, the damages being limited to the pecuniary loss, evidence to show the good or bad reputation of such next of kin is inadmissible to affect that question.

At Law. On motion for new trial.

Action by Emeline A. Hardy, as administratrix of the estate of Frank S. Hardy, deceased, against the Minneapolis & St. Louis Railway Company and the Burlington, Cedar Rapids & Northern Railway Company, to recover damages for the alleged negligent killing of her intestate. There was a verdict for plaintiff, and defendants moved for a new trial.

*D. F. Morgan* and *W. Bowman,* for plaintiff.

*J. D. Springer* and *F. D. Larrabee,* for defendants.

SHIRAS, J. The question of negligence, upon which this case turned before the jury, was whether the deceased, Frank Hardy, was required by his superior officer, to-wit, Murphy, the yard-master, to perform the duties of a switchman, and as such to go between the cars of the moving train for the purpose of uncoupling the same. There can be no doubt that a person who performs such duties is placed in a dangerous position. The deceased, a lad of 16, had been engaged to perform the duties of a call-boy at the yard of defendants at Albert Lea. He met his death by being crushed between two cars in the defendants' yard, while engaged in uncoupling the same. The question of fact upon

which the case depended, was whether the yard-master caused the deceased to undertake the duties of a switchman, and in the performance thereof to go between the moving cars. The jury found the issue for the plaintiff, and it is strongly urged in support of the motion for new trial that there was not sufficient evidence to justify the jury in so finding. It cannot be questioned that the evidence is not at all clear upon this point. One witness' for plaintiff, who testified to facts strongly supporting plaintiff's theory of the case, was sought to be impeached in many ways. The question of his veracity, and the weight to be given to his evidence, if any, was fairly submitted to the jury, whose province it was to determine the question. The court does not know whether the jury gave any credence to the witness or not. Should another trial be had, and the same witness should testify on behalf of plaintiff, the court would be compelled to submit the same question touching the credibility of the witness to the jury. Leaving the testimony of this witness out of the case, there is still left some evidence tending to support the theory of the plaintiff and the verdict of the jury. Murphy, the yard-master, who had charge of the engine at the time of the accident, testified that he did not order the deceased to go between the cars, but he also just as positively testified that he did not receive or act on any signal given through the deceased, and did not notice him except as he saw him go towards the cars. In this latter important particular Murphy was expressly contradicted by the testimony of the witnesses Johnson and Marsh, introduced on behalf of the defendants. The latter was the brakeman, who was on the rear end of the two detached cars, and he testified that, being on the rear end of the cars, he could not give the signals to Murphy upon the engine direct, and that he gave a signal to go ahead, which was repeated by Frank Hardy to Murphy, who thereupon pulled ahead; and then, when the engine had cleared the switch, he gave the signal to back down to Hardy, who repeated it to Murphy, and the latter then backed the engine and car attached down towards the cars on which the witness was standing. The witness Johnson was not an employe of the defendants. He testified that he saw Hardy come down by the engine; that deceased was between himself and Murphy, who had his head out of the cab window; that Murphy was looking northward, that is, towards Hardy, which would be in the contrary direction from the cars on which Marsh was then standing; that he saw Hardy give a signal with his hands, and thereupon Murphy pulled in his head, and the engine began moving, and the deceased stepped in between the cars, and then the accident happened. This testimony, coming from witnesses introduced on behalf of the defendants, clearly shows that Murphy expected to receive signals from Hardy, and that he acted upon them when received; otherwise he would not, as testified to by Johnson, have been looking northward from his cab, and watching Hardy, instead of looking towards the cars. Murphy himself admits that he saw Hardy go towards the cars, just as Johnson testified that he did. The evidence, therefore, clearly proves that Hardy was engaged in the performance of the duties of a switchman, and that Murphy knew it, and accepted such services, and acted thereon, at

least so far as the giving and receiving signals were concerned. It no less clearly appears that Hardy, after receiving and giving the signals to Murphy, then undertook to perform the next duty, which ordinarily would have been expected of a switchman in his position, to-wit, that of going between the tender and car, for the purpose of uncoupling the same. The theory of the plaintiff was that he undertook this duty by the direction or procurement of Murphy, who was his superior officer, and who thus subjected him to the dangers incident to such a position. The theory of the defendants was that Hardy voluntarily placed himself in this position; that he was a bright, ambitious young fellow, desirous of pushing himself forward in the service of the company; and that he undertook to uncouple the cars without direction or control on the part of Murphy. The jury was instructed that, to enable plaintiff to recover, it must be shown that Hardy went between the cars by the direction or procurement of Murphy, the yard-master, and that, if he went between the cars of his own volition, without being directed or required so to do by Murphy, then plaintiff could not recover.

There are circumstances proven which tend strongly to support the theory of the plaintiff, although no witness testified that he heard Murphy order or direct Hardy to go between the cars, or to make the uncoupling. Unless, therefore, it was the duty of the court to instruct the jury, as a matter of law, that it was incumbent on plaintiff to prove that some express command or direction was given by word of mouth by Murphy to Hardy to thus go between the cars, all that could be done was to submit the question as one of fact to the jury for their determination in view of all the facts disclosed in the evidence. This was done, and, the jury having settled the question of fact thus submitted to them, the court is not justified in reversing their finding simply because the evidence is circumstantial. The case is of such a character that a verdict for the defendant would have been entirely satisfactory to the court. Yet it cannot be said that the verdict is entirely without support, even taking the evidence introduced by defendant solely into account. Under these circumstances the verdict cannot be set aside on the ground that it is unsupported by evidence.

It is also urged in support of the motion for new trial that the court erred in not instructing the jury that when Murphy, the yard-master, went upon the engine to act as engineer thereon, he then ceased to be a superior officer or vice-principal, and his negligence, if proven, would be that of a co-employe, for which, under the law of Minnesota, as it was when the accident happened, the common master would not be liable. See Quinn v. Lighterage Co., 23 Fed. Rep. 363. If the accident had been caused through negligence in the handling or running of the engine by Murphy, then we would have had a state of facts which would have presented the question ruled on in the case just cited. The negligence relied on in the case on trial was the allegation that the yard-master required or directed Hardy to undertake the dangerous duty of uncoupling the cars, and thereby necessarily subjected him to a risk greater than that pertaining to his proper employment. When Murphy undertook the duty of running the engine,

he did not cease to be yard-master. The duty of seeing to the making up of the trains in the yard belonged to him, as yard-master. If he directed Hardy to undertake the duties of a switchman, which the jury have found he did, he so directed him as yard-master, and not as an engineer. If, when Murphy was on the engine, he had given him some proper order in connection with his duties as call-boy, the latter could not have justified a refusal to obey the same on the ground that Murphy had ceased to be yard-master simply because he had assumed the additional duties of an engineer for the moment. It is the negligence of Murphy as yard-master, and not as engineer, for which the company is held liable, and there is nothing in the evidence which would justify the finding that Murphy had ceased to occupy the position of a superior towards the deceased when the latter was called upon to act as a switchman.

Exception was taken at the trial to the exclusion of certain depositions taken for the purpose of attacking the reputation of the plaintiff. The ruling was that evidence tending to show the wealth or means of support of the plaintiff, she being one of the next of kin, was admissible, but not evidence merely tending to show the reputation of the plaintiff. This evidence, if admitted, could only affect the amount of recovery, and it seemed to the court upon the trial that it was immaterial. In cases of this character, where the damages are limited to the pecuniary loss of the next of kin, caused by the death of the relative, is it permissible, in order to increase or diminish the amount of the damages, for either party to prove that the next of kin are possessed of a high character, or the contrary? If it be true that a poor reputation should diminish the damages, then a good reputation should increase the same. Yet this cannot be true. There may be cases presenting peculiar features in which such evidence might be competent, but in a case like the present, the introduction of such evidence would not enlighten the jury upon the question of loss, caused by the death of the son and brother, but it would introduce an issue which would, unless it was clearly sustained, and might even then, tend to prejudice the jury against the defendants, and lead to the rendition of larger verdicts than would otherwise be given. The motion for new trial is therefore overruled. For the information of counsel, I would say that the conclusions announced on the several points relied on in support of the motion for new trial are concurred in by Judge BREWER, although the opinion itself has not been submitted to him.