### WANAMAKER *v.* CITY OF ROCHESTER.

*(Supreme Court, General Term, Fifth Department,* January 22, 1892.)

NEGLIGENCE—EVIDENCE—PROVINCE OF JURY.

Plaintiff's intestate, while engaged in the water-works repair department of defendant city in laying water-pipes in a trench which had been prepared by defendant, and in which he was sent by defendant's foreman, was crushed by a cave-in. The usual custom of defendant to inspect trenches before sending men to place water-pipes in them was not observed. *Held,* that the question of defendant's negligence was properly submitted to the jury.

Appeal from circuit court, Monroe county.

Action by Theresa Wanamaker against the city of Rochester. From a judgment entered on a verdict for plaintiff, and from an order denying defendant's motion for a new trial made upon the minutes of the court, defendant appeals. Affirmed. For former report, see 15 N. Y. Supp. 159.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*C. D. Kiehel,* for appellant. *Eugene Van Voorhis,* for respondent.

MACOMBER, J. The plaintiff, as the administratrix of the estate of Joseph Wanamaker, deceased, recovered at the circuit the sum of $5,000 damages against the defendant by reason of its negligence, whereby, through the caving in of a trench in which the deceased was working, the latter lost his life. The decedent was in the employment of the water-works repair department of the city of Rochester, and was engaged in the occupation of connecting and laying water-pipes and doing general repairs. Under the direction of a foreman of a gang of men in the employment of the city, he was, on the 2d day of June, 1890, sent to do certain work on an extension of a water-pipe in a trench on North Union street, in that city. This trench had been dug by a firm of contractors known as "Thomas Oliver & Sons," under a contract with the city. The trench was upwards of 300 feet in length, about 4½ feet deep, and 2½ feet in width. The plaintiff's intestate, while engaged in knocking

out the dead end of a pipe already in the trench, (a process which is described as removing the temporary filling of the end of a pipe, so that an extension may be made,) was crushed by the caving in of the earth upon him. It is argued by the learned counsel for the defendant that there was no liability upon the city, because the deceased assumed the risks and perils attending the work in which he was employed. The statement of the general principle applicable to employment of persons engaged in work of this description by municipal corporations is not to be disputed. But the facts disclosed in this appeal do, as it seems to us, remove the case from the category of those falling within that rule. When the deceased approached this place, and got into the trench, he had not, by previous working in the place or otherwise, obtained any information which would lead him to suspect that the earth was likely to cave in, or to charge him with notice of any danger. He came there with a gang of men under the direction of a foreman, in the employ of the authorities of the water-works department of the city of Rochester, not to prepare a trench for the pipes, but to place in the trench, which the city had already undertaken to have prepared for their work, conduit pipes for the flow of water. Under these circumstances, it was the duty of the city to afford to its workmen a trench which should be proper and safe for the work which the employe was required to do. The circumstance that Thomas Oliver & Sons, who may, in a certain sense, be deemed independent contractors, made this ditch, is unimportant, because the deceased was not in the employ of these independent contractors, but of the city itself. Nor can the point be sustained that the city may escape liability because Smith, the foreman of the gang of men, may have been guilty of negligence in sending the deceased into the ditch to make these connections. It is true, as is urged by counsel for the city, that the deceased and Smith were co-employes; but they were co-employes only in respect to preparing the end of the pipe already in the trench for connection with other lengths of pipe. Neither of them had any connection with the digging of the trench, nor was either of them charged with any special duty to support the walls of the trench so as to prevent caving in. The city, in substance, by its employment and directions, said to the deceased and the other men: "We have prepared a trench for the laying of more pipe in North Union street, and you proceed there and make the necessary connections." The decedent had a right to assume, under all the circumstances of the case, that the city had caused to be prepared a suitable and proper trench for this purpose.

It is further argued by counsel that the contractors, Thomas Oliver & Sons, if anybody, were solely liable for the death of the intestate. There is evidence to show that Smith, the foreman, said he would go and see Thomas Oliver & Sons for the purpose of cleaning out the ditch and fixing it up so that it could be worked in. But before Oliver & Sons, or their men, had time to come to assist in preparing the ditch for receiving the pipe, the intestate had met his fatal injuries. In entering the trench while Smith was gone for Oliver's men, Wanamaker did no more than he had seen Smith already do; for the latter had gone down into the trench for the purpose of examining the pipe and seeing what was necessary to be done. No one, so far as the case shows, had discovered any evidence of danger from the walls of the trench; but, on the contrary, their attention and effort was directed solely to bailing out the water which had accumulated there from one source and another, so as to enable the laying of the pipes to proceed. The usual custom of the repair section of the water-works department, to inspect trenches before sending men to place water-pipes in them, was not observed in this instance. We think the question of the defendant's negligence was properly submitted to the jury, and that the defendant owed a duty to Wanamaker, under the circumstances, to afford to him, for the work required, a reasonably safe trench; and that the deceased had a right to rely upon the implied assurance that the

open trench, which had been made under the direction of the city, was of that character. Nor are we without apposite and guiding authority for these propositions. In *Kranz* v. *Railway Co.*, 123 N. Y. 1, 25 N. E. Rep. 206, a trench had been opened for the purpose of furnishing an employe of the company a proper place and opportunity to do the work of cleaning out certain under-ground water-pipes. This was done under the direction of the defendant's sectionman and laborers, under his immediate control and direction. While engaged in disconnecting the pipes, the earth caved in upon the employe and he was killed. It was there held, in an action by the administrator to recover damages for the death of the intestate, that the railway company owed to the decedent the duty of providing a place reasonably safe for the work he was directed to do; and consequently reversed the decisions made at the circuit and at the general term, and granted a new trial. The court there declared: "The deceased had nothing to do with the preparation of the trench. It was prepared not by him, but for him, and reasonable care in its preparation, we think, was the master's duty to the servant." With this authority before us, it is not needful to look for others tending in the same direction; for the case cited and the one before us are not merely analogous,— they are homologous. It follows, therefore, that the judgment and order appealed from should be affirmed. All concur.