## McLEAN v. STANDARD OIL CO. OF INDIANA.

(Supreme Court, General ·Term, Fifth Department.   January 18, 1893.)

INJURY TO EMPLOYE—DEFECTIVE STAGING.

Plaintiff, an iron worker, while at work on a scaffold built by defendant's carpenters, fell to the ground by reason of the breaking of a defective plank on which he was standing, and was injured. The defect consisted in that the plank was so cross-grained as to render it unfit for use for such purpose,—a defect which could have been detected upon examination. *Held,* defendant was liable.

Appeal from circuit court, Erie county.

Action by Henry McLean against the Standard Oil Company of Indiana to recover for personal injuries. From a judgment entered on an order directing a nonsuit and dismissal of the complaint, plaintiff appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

Charles B. Wheeler, for appellant.

George J. Sicard, for respondent.

LEWIS, J.   The action was brought by the plaintiff to recover damages for injuries sustained by him while in the employ of the defendant as a mechanic, aiding in the construction of iron oil tanks at the defendant's works at Whiting, Ind. Plaintiff was a boiler maker, and was injured by a fall in a tank in which he was working at the time, caused, as claimed by him, by the breaking of a plank in the scaffolding in one of the tanks upon which he was at the time standing. No one saw the plaintiff fall. He testified that he was at work upon the scaffolding which had been constructed by the defendant to facilitate putting on an iron roof upon the tank. The sides of the tank had been completed to the height of 30 feet. The platform of the scaffolding was a foot and a half to two feet below the tops of the sides of the tank, and rested upon a framework of wood inside the tank. The platform consisted of plank 12 to 14 feet in length, 10 to 12 inches wide, and 2 inches thick. Plaintiff testified that he was standing in about the center of the platform, and was engaged in pulling into position one of the iron plates forming the roof of the tank. He was so seriously injured by the fall that he was not able to recall at the time of the trial any of the particulars of the accident; he could not even remember that he did fall. Other witnesses who were in the immediate vicinity of the tank at the time of the accident testified that within a minute or two after the accident they saw the plaintiff; that he had fallen upon the floor of the tank, and was so seriously injured that he was unconscious. A plank was found lying upon the floor of the tank, broken into two pieces of about equal length. The breaking was caused by the splitting of the wood with the grain or fiber of the plank. The grain at the place of breaking ran across the plank at so sharp an angle that the two broken ends, if placed together, would overlap each other only eight or nine inches. There were also indications on the surface of the plank tending to show that it was taken from the heart of the tree. Jerry Moriarty, who was superintendent of the gang of men in which plain-

tiff was working, was at the tank two or three minutes after the accident. He testified that when he arrived there plaintiff had just been brought out of the tank, and was unconscious.   He further testified as follows:

"We found the plank that he fell through.  It was broken nearly in two; not exactly in the center.  There were two pieces of it.  The break was not a straight break; it was a kind of a split.  I don't know whether it was in the center of the plank or either end, but I know it was the end he was on.  It must have been.  It certainly must have been a cross-grained plank.  Anybody could judge that it was cross-grained that saw it.  After I went inside the tank, I looked up at the scaffolding above, and saw quite a lot of scaffolding there.  Question. Did you see the place where a plank was gone?  Answer. I did; and the plank was at the bottom of the tank.  Q. Right under it?  A. Right down on the bottom."

Frank McLean, a cousin of the plaintiff, who was at the time of the accident in Buffalo, hearing of the accident, went to Whiting to see the plaintiff, and called upon W. P. Cowen, who was the general manager of all of the defendant's business at that place.   McLean testifies:

"I went to the tank with Mr. W. P. Cowen, and went inside.  Saw a plank lying inside of the tank.  Mr. Cowen showed it to me.  It was a plank twelve or fourteen feet long, ten or twelve inches wide, and two inches thick, of hemlock.  The plank seemed to be cross-grained wood.  I noticed the heart of the tree,—what you call the heart of the plank,—in about the center of the plank. The heart ran through the center of the plank lengthwise."

While no one actually saw the plaintiff fall, and there is no positive and direct evidence as to the way the accident occurred, the facts and circumstances quite clearly establish that he fell from the scaffolding, and that the fall was occasioned by the breaking of the plank upon which he was standing.   That this was the way in which the accident occurred, seemed to have been assumed upon the trial.   It is suggested by the respondent's counsel that the plaintiff might have made a misstep, or might have been overtaken by a fit or sudden disease, and thus have fallen and met with the injuries he sustained.   While it is possible that the accident may have occurred in one of the ways suggested, it is very improbable.   Plaintiff's explanation of the cause of the accident is sustained by the evidence and circumstances surrounding the case, and is reasonable and probable.   The plaintiff had nothing to do with the construction of the scaffolding.   That was built by carpenters in the employ of the defendant.   It was the duty of the defendant to furnish the plaintiff safe scaffolding upon which to stand while engaged in his work.   There was evidence, we think, tending quite strongly to show that the defendant neglected its duty to the plaintiff in this regard. Expert evidence was not required to show that the plank which broke and caused the plaintiff's fall was defective, and unfit to be used in such scaffolding.  Every person of common experience and observation knows that a plank with such cross-grain as this one had is much weaker, and much more liable to break, than one is with the grain running lengthwise with the plank.   There was evidence tending to show that the defects in this plank could have been easily ascertained had it been properly examined.   While it is incumbent upon the plaintiff in negligence actions to show affirmatively that the defendant's negligence caused the injury complained of, it is not necessary that the evidence should be

positive and direct. Proof of circumstances from which the inference may be fairly drawn is sufficient. Galvin v. Mayor, etc., 112 N. Y. 229, 19 N. E. Rep., 675. There was, we think, sufficient evidence that the negligence of the defendant was the cause of the accident, so that the question should have been submitted to the jury. The plaintiff was a worker in iron, and not a carpenter. He had a right to assume that the defendant's carpenters had prepared for his use a reasonably safe staging. There was no such obvious and palpable defect in the scaffolding as would have been likely to have attracted his attention. We find no evidence in the case tending to prove negligence on the part of the plaintiff contributing to his injuries. The case we think should have been submitted to the jury. The judgment appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.