Daniel McCampbell, Plaintiff, *v.* The Cunard Steamship Company (Limited), Defendant.

*Master and servant — defective appliances in use in unloading a cargo — liability of a steamship company.*

69  131
76  583
69  131
3ap617

On the trial of an action brought by a longshoreman, who was injured while unloading a cargo from a vessel down a "skid" to the dock, to recover damages from his employer, the vessel owner, his evidence tended to show that his work was directed by the defendant's superintendent in charge of the dock; that to each end of the skid was attached a wedge-shaped piece, called a "mouthpiece," intended to follow the skid as the vessel swayed; that the "mouthpiece" at the foot of the skid became detached after the plaintiff commenced work, so that a gap of some five inches came between the skid and the mouthpiece, in which the wheels of a truck used by the plaintiff caught, causing the injury complained of, which, it was testified, the plaintiff could have escaped if the mouthpiece had been properly attached to the skid.

*Held,* that the separation of the mouthpiece from the skid was not a danger which the plaintiff accepted; that no such gap should have been permitted, and that its existence was the fault of the superior or his *alter ego,* the superintendent not being a fellow-servant of the plaintiff; and, hence, that the complaint was improperly dismissed.

MOTION for a new trial on exceptions taken by the plaintiff at a trial at the Queens County Circuit, which resulted in a dismissal of the complaint at the close of the plaintiff's case, which exceptions were ordered to be heard at the General Term in the first instance, by an order made at the Circuit on the 6th day of October, 1892.

The action was brought to recover damages for a personal injury suffered by the plaintiff, a longshoreman or laborer, while in the employ of the defendant unloading a cargo from the steamship *Gallia,* owned by the defendant.

The evidence given on the part of the plaintiff tended to show the following facts :

" On the 23d day of August, 1883, the plaintiff was in the employ of the defendant at its pier, and on the morning of that day he was directed by a Mr. Craven, who was the foreman or superintendent in charge of the dock, and the official who employed the plaintiff for the defendant, to take a four-wheel, flat-topped truck and go up to the deck of the ship, and truck drums of soda down an inclined skid to the dock.

" The drums of caustic soda were smooth iron cylinders about 38 inches long and 20 in diameter, filled with caustic and weighing when filled 600 pounds each.   To reach the dock in trucking these drums from the deck to the dock, the defendant provided a very steep inclined gangplank or 'skid,' which rested one end on the deck, the other on the dock, and was about 20 feet long.   The deck was 8 or 9 feet higher than the dock.

" This 'skid' was five inches thick, and it was provided at each end with a wedge-shaped piece known as a 'mouthpiece,' the thick side of which was to be turned toward, and the whole made fast to the skid by means of 'ring bolts' and lanyards at either side of the skid and mouthpiece.   If it is properly fastened, according as the ship sways, the mouthpiece follows the skid and moves back and forward in the dock.

" To prevent the heavy drums of caustic from rolling forward off

the truck and crushing the person drawing it, while the truck was being drawn down the skid, the defendant provided pieces of refuse or 'dunnage' wood, one of which the men placed in front of the drums on the platform of the truck. A piece was also provided by defendant to be placed between the spokes of the hind wheels to prevent the latter from turning.

" The plaintiff testified that he had never used these trucks, nor seen them used before; had never seen caustic soda loaded or unloaded in this way before, and the defendant's dock was the only one along shore where this method was in use. And when the flat-top, four-wheel trucks are used on other docks, even on the level dock, they are constructed with battens or crosspieces, made fast to the platform of the truck, to prevent round freight from rolling forward or backward.

" When the plaintiff went to work in the morning in question, he found the ship *Gallia*, which had come in the night before, all ready to unload. The ship had been made fast to the pier, the hatches had been taken off, the skid and mouthpieces were in position, and, so far as he saw, everything was in readiness, and they were beginning to unload.

" Obeying the superintendent's direction, the plaintiff took the truck provided for him, and went with it up the skid to the deck of the ship. There it was loaded with two drums of caustic, and his companion placed in front of the drums a piece of the dunnage wood to prevent the drums from rolling forward. The plaintiff started down the skid pulling his load, and when nearly to the dock, hearing a shout, looked over his shoulder, noticed the batten was slipping forward and the drums were about to roll on him; he started to run to the dock, and would have reached the dock in safety but for the fact that the mouthpiece was not fast to the skid. The lanyards were loose leaving an opening of about four or five inches, in which the wheels of the truck caught, the jar throwing him down and causing the drums to roll forward on to his legs. This was the first and last load unloaded in this way."

*George William Hart*, for the plaintiff.

*Frank D. Sturges*, for the defendant.

PRATT, J. :

It is clear that the truck was not a proper vehicle on which to move the drums down an inclined plane. And it is certain that the skid was placed at a dangerously steep angle.

Whether the plaintiff could recover on these grounds may be doubtful as it might be said that the danger was obvious and he took the risk. To a certain extent a laborer may rely on the presumed superior knowledge of his employer, and perhaps it was a fair question for the jury whether he might do so in this instance. We need not pass upon these questions as we think another point is presented which requires a reversal.

Both witnesses testify that had the "mouthpiece" been properly attached to the skid so as to follow its motion the plaintiff could have escaped. The gap of some inches left between them is not shown to have existed when the plaintiff went to the work. That would vary from moment to moment as the vessel rolled. That was a danger we cannot say plaintiff accepted.

No such gap should have been permitted, and that it existed was the fault of the superior or his *alter ego*.

The stevedores did not rig the vessel for the work, and the superintendent was not a fellow-servant with the plaintiff.

Judgment reversed, new trial ordered, costs to abide event.

DYKMAN, J., concurred; BARNARD, P. J., dissented.

Exceptions sustained and judgment reversed, and new trial granted, costs to abide event.