PETER SCHERER, Appellant, *v.* HOLLY MANUFACTURING COMPANY, Respondent.

*Master and servant — duty of the former as to appliances — negligence not presumed — his liability for the negligence of his servant.*

While a servant assumes the ordinary hazards incident to the service into which he enters, the master is bound to see that he is not subjected to perils arising from want of reasonable care in furnishing suitable and safe implements, machinery and appliances in and pertaining to the business in which he is employed. What is reasonable care in a given case is dependent, more or less, upon circumstances, and the burden is with the party charging negligence to prove it.

The mere fact that a servant has suffered injury by reason of defective machinery does not raise the presumption of negligence on the part of the employer, nor is the master required to furnish the very best appliances for the service, nor does he absolutely guarantee the sufficiency or safety of appliances used.

The master is required to use reasonable care, which may be defined to be such care as a prudent man, having in view their suitableness and safety, would use

in providing appliances if he personally were to be exposed to all the perils which might arise from their use in the service for which they were designed. The master is responsible to an employee for his injuries if they result solely from the master's failure to exercise reasonable care in furnishing suitable instruments for the service. If the reparation and adjustment of apparatus or machinery comes within the duty which the master assumes to perform, the servant who makes the repair or adjustment, whatever may be his grade in the general service, represents the master, and for the consequences of the negligence of such servant in the performance of such duty the master is responsible.

APPEAL by the plaintiff, Peter Scherer, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Niagara on the 31st day of May, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Niagara Circuit dismissing the plaintiff's complaint upon the merits, and also from an order entered in said clerk's office on the 29th day of June, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*Wallace Thayer*, for the appellant.

*A. K. Potter*, for the respondent.

BRADLEY, J. :

The business of the defendant in the operation of its foundry and machine shop at Lockport, N. Y., has for many years been the manufacture of pumping engines and pumps for water works.

The plaintiff, employed by the defendant as a laborer in the molding department, was on June 30, 1892, injured by molten iron thrown out of a ladle or bucket suspended from a crane. The charge is that the cause was a defective condition of the apparatus attributable to the negligence of the defendant. The method of conveying melted iron from the furnace to the place of molding the castings, was in a large iron ladle by means of a steam crane or derrick. The bail upon which the ladle was hung was attached on two opposite sides to a trunnion a little below the perpendicular center of the ladle, so as to permit it to be turned with very little force. In fact it would not remain upright when suspended, unless held so by means of some appliance. To accomplish this there was a gear or cog wheel firmly keyed to the ladle, and a worm attached to the bail with a clamp held to its place by screws or bolts. The cogs or

teeth of the wheel and the thread of the worm, when in position, interlock.

In the proper adjustment of the apparatus is the safety of transporting the melted iron from the furnace to the molds.   By means of a lever or crank the worm may be turned, and thus the gear wheel is correspondingly moved turning the ladle.   In that manner, as occasion requires, the ladle may be turned and held at any angle and restored to its upright position.   A few days before the day in question the gear wheel was broken, and then a new one was put in its place.   To do this it was also necessary to loosen the clasp that held the worm in its place.   And after it was repaired the ladle was taken to the cupola of the furnace, filled with 9,000 pounds of molten iron, and when it swung off it was tipped slightly and the refuse substance on the surface of its contents skimmed off by the workman having it in charge.   Then it was observed by him that the thread of the worm did not interlap with the teeth of the cog wheel. The man at the lever was unable to bring them together, and as the consequence the ladle necessarily tipped over, spilling the contents, resulting in a serious permanent injury to the plaintiff.   While the plaintiff assumed the ordinary hazards incident to the service in which he entered, the defendant owed the plaintiff the duty that he should not be subjected to perils arising from want of reasonable care in furnishing suitable or safe implements, machinery and appliances in and pertaining to the business in which he was employed. What is reasonable care in a given case is dependent more or less upon circumstances.   And the burden is with the party charging it to prove negligence.   The mere fact that he has suffered injury by reason of defective machinery does not raise the presumption of negligence of the employer.   Nor is the latter required to furnish the very best known appliances for the service.   Nor does the master absolutely undertake to guarantee their sufficiency or safety.   As has been suggested, he is in that respect required to use reasonable care, which may be defined as such care as a prudent man, having in view their suitableness and safety, would use in providing the appliances if he personally were to be exposed to all the perils which might arise from their use in the service for which they were designed. (*Devlin* v. *Smith*, 89 N. Y. 470 ; *Burke* v. *Witherbee*, 98 id. 562 ; *Stringham* v. *Hilton*, 111 id. 188; *Harley* v. *B. C. M. Co.*, 142 id. 31.)

The device of the gear wheel and worm had been in use many years in the defendant's foundry with success and without any accident prior to the time in question, and so far as appears a similar apparatus is in use in other foundries where large castings are molded. There was nothing in the material, method of construction or operation of it when properly adjusted to permit imputation of want of due care on the part of the defendant in the application of it to the purpose for which it was used. The question is whether or not the conclusion is by the evidence permitted that the defendant was chargeable with negligence in not properly restoring the apparatus to a condition of safety for use after the gear wheel was broken.

The importance of having the apparatus properly adjusted is apparent for the protection of the employees as well as for the good of the service, when the ladle is swung five or six feet above the ground floor in passing from the furnace to the place of deposit of its contents.

This accident occurred the first time the ladle was used after the new wheel had been attached to it, and was the result of the first attempt to incline it in suspension by the use of the worm. And the evidence tends to prove that the failure of the apparatus to work properly was caused by the worm rising or slipping upon the bail, and thus taking it out of cog with the wheel; otherwise there could have been no danger apprehended, and that this could not have happened if the bolts of the clasp which held the worm to its place had been properly screwed up, appears by the evidence. The only way of accounting for the slipping up of the worm on the bail of the ladle, and thus separating the thread of it from the cogs of the wheel, was in the looseness of these bolts or screws. Yet the testimony of the machinist who did the work and of his assistant is that the bolts were screwed up tight, and the foreman also testified that he saw them screwing up the bolts. If this was well done as those who did it say it was then something must have occurred shortly after to weaken the firmness of the attachment of the worm to the bail at its proper place. But the evidence does not warrant the inference that anything was done or happened to the apparatus after its repair was completed and before the accident to loosen the clasp of the worm to the bail. The strain upon the fixture in the operation of

the ladle is said to be but slight.   And in this instance the only use made of the apparatus other than to hold the ladle upright in the start, was to tip it slightly for skimming, and thereupon the worm failed to perform the service for which it was intended.

This condition of it the jury were permitted to find was not consistent with the evidence of these witnesses, that the bolts were screwed up tightly or properly.   And in view of their relation as employees to the defendant at that time, the question whether or not the bolts were so screwed up was one of fact for the jury. (*Dean* v. *Van Nostrand*, 23 N. Y. Wkly. Dig. 97; *Elwood* v. *W. U. Tel. Co.*, 45 N. Y. 549; *Volkmar* v. *M. R. Co.*, 134 id. 418; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 562–567.)

As the duty was with the defendant to furnish and maintain suitable instrumentalities for the service and to supply a safe place for its employees to do their work, it is responsible to the plaintiff for his injuries if they resulted solely from the defendant's failure to exercise reasonable care in that respect.   The reparation and adjustment of the apparatus attached to the ladle for its use came within the duty which the defendant assumed to perform, and the servant who did it, whatever may have been his grade in the general service, represented the defendant, and for the consequences of his negligence in the performance of it the defendant is responsible.   (*Pantzar* v. *Tilly F. I. M. Co.*, 99 N. Y. 368; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 id. 374; *Kranz* v. *L. I. R. Co.*, 123 id. 1; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 id. 416; *Wannamaker* v. *City of Rochester*, 44 N. Y. St. Repr. 45; 137 N. Y. 529.)

The view taken of the evidence is that it was such as to permit the jury to find that the plaintiff's injury was occasioned by the failure of the person who sought to adjust the apparatus to screw up the bolts sufficiently to hold the worm to its place, and, if so, that the failure to do it was attributable to want of reasonable care on his part, for which the defendant was responsible, and that those questions should have been submitted to the jury.   This inquiry would also involve the consideration of the question whether a reasonably practical test of the structure was applied to it after the reparation and before it was put into the service.   The circum-

stances under which the thread of the worm left the cogs of the gear wheel, resulting in the unfortunate event, seems to have been such as to permit the inference that the worm was so loosely clasped to the bail of the ladle that it had substantially nothing other than its own gravity to hold it to its place.

The evidence warranted the conclusion that the plaintiff was free from contributory negligence, which was also a question of fact for the jury.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment and order reversed and new trial granted, with costs to abide the event.