### SWEENEY v. VACUUM OIL CO.

(Supreme Court, Appellate Division, Fourth Department.   March 14, 1896.)

MASTER AND SERVANT—FELLOW SERVANTS.

    Plaintiff, who was employed to work at an oil press in defendant's oil
works, was taken by the superintendent from his regular work and put
on the work of putting in a new oil tank.   In the course of this work the
ropes used in moving one of the old tanks became tangled, and the super-
intendent tried to distangle them by placing an iron pipe between them.
Not succeeding, he left the pipe in its position, and directed plaintiff to
go up a ladder and untwist the ropes, which he did.   Plaintiff then de-
scended, and by direction of plaintiff slackened a rope, and the iron pipe
fell, and struck him on the head.   Held, that plaintiff and the superintend-
ent were fellow servants as to the acts of the superintendent resulting in
the injury.   Ward, J., dissenting.

Action by Patrick Sweeney against the Vacuum Oil Company for
personal injuries caused by defendant's negligence.   There was a
verdict directed by the court in favor of defendant, and plaintiff moves
for a new trial on exceptions ordered to be heard at the general term
in the first instance.   Denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and
WARD, JJ.

J. H. Waring, for plaintiff.
W. F. Cogswell, for defendant.

PER CURIAM.   Held, that the negligence in this case, if any, was
that of a co-employé, and therefore the nonsuit was properly
granted.

WARD, J. (dissenting).   This action was brought to recover dam-
ages for personal injuries received by the plaintiff at the oil-refining
works of the defendant at Olean, N. Y., on the 21st day of June, 1892,
caused by the alleged negligence of the defendant.   The defendant
was a corporation, and was engaged in refining and manufacturing
the products of petroleum oil at Olean, N. Y.   The plaintiff entered
into the defendant's employ in March, 1892, and his business in the
refinery was to press the oil from wax which is produced from crude

oil by means of presses for that purpose. The presses were in a room in the refinery. Underneath the presses were two tanks for the reception of the oil that was forced out of the wax. It became necessary, in the course of the business, for the defendant to place a third tank below the presses, for the reception of all the oil that they created, for which purpose the excavation in which the tanks were located in the ground under the floor of the refinery was enlarged, by the direction of the defendant, and a new tank was placed between the old ones. For this purpose, the old tanks had to be crowded apart. This work had been going on for several days prior to the accident to the plaintiff. The plaintiff had been taken from his ordinary work of pressing the oil from the wax by George W. Hooker, the defendant's superintendent at the factory, and put upon the work of excavation, and of putting in this new tank. After the excavation had been completed, tackle blocks were rigged up to move one of the old tanks. They were put up through the ceiling of the room above the tanks, some 10 feet above the floor, and a rope or chain was attached to them and to the tank, so that, by pulling upon the ropes passing through the tackle blocks, the tank could be slid along to make room for the new one that was put in its place. The ropes passing through the tackle blocks got entangled in some way, and the superintendent got a piece of iron pipe, about nine feet long and two inches in diameter, which he placed between the ropes, and, by twisting it, tried to disentangle them. For some reason, it did not work satisfactorily; and the superintendent, leaving the iron in this position, directed the plaintiff to go up on a ladder to untwist the rope or chain, which the plaintiff did. The plaintiff then descended, and the superintendent called to plaintiff: "Come on here, come on here, Sweeney! Pull on this rope! Slack on this rope!" This the plaintiff did, and just as quick as he did so the iron came down, and hit him on the head. The plaintiff did not see the iron when he was up on the ladder, nor did he see it when it came down. The iron hit the plaintiff upon the head, knocked him down, and rendered him insensible, and inflicted a serious injury upon him.

The answer of the defendant admitted, and it was conceded upon the trial, that the said George W. Hooker was employed as its superintendent during all the time that the plaintiff was in its employment, and that the defendant gave him (the said superintendent) full charge, control, and direction of all its affairs in and about its business in Olean, which said Hooker assumed and discharged during all the time the plaintiff was in its employment. In the transaction, therefore, out of which this action grew, Hooker was the vice principal, or alter ego, of the defendant. Had the defendant been an individual, and been present and personally directed the work and the plaintiff, as was done by this superintendent, no question would arise but that he was guilty of negligence, or, at least, there was a question of his negligence to go to the jury. This corporation could not personally be present, except through its officers and agents. The acts of Hooker were the acts of the corporation defendant. The plaintiff was not engaged in his ordinary work of extracting the oil from the wax. The defendant was enlarging its place of business,—

adding a new structure in the press room, so as to increase the capacity of that room for storing the oil that should be pressed from the wax thereafter.    It was, in a measure, a matter of original construction,—a matter that falls primarily within the duties of a master.    All that was done by the defendant was necessary in carrying out the purpose of the defendant as above indicated, and each step that was taken by the plaintiff in this business, including the final act which precipitated upon his head the iron that had been placed among the ropes by the superintendent himself in carrying on the defendant's business then in hand, was done through the positive command of the master, through its superintendent.    No further statement would seem to be necessary to show that a proper case was presented to the jury, as to the negligence of the defendant, and as to whether the plaintiff was guilty of contributory negligence.    The defendant, however, takes the position that the acts of the superintendent above detailed were not those of the master (the defendant), but of a fellow servant of the plaintiff in carrying on the detail of the defendant's business; so that at that time the superintendent occupied the dual relation of master and servant, representing the master in all matters that it concerned the master to do, and being a servant of the master, and a fellow servant with the plaintiff, in such matters as the plaintiff was ordinarily engaged in, in his work in that refinery,—and relies upon Crispin v. Babbitt, 81 N. Y. 516, and Cullin v. Norton, 126 N. Y. 1, 26 N. E. 905, to sustain that position. An examination of these cases will disclose such a different state of facts from the one at bar as will leave them of no value as authority here.    In Crispin v. Babbitt the plaintiff was engaged as a workman at the iron works of the defendant at Whitesboro, N. Y.; and by the order of John L. Babbitt, who was called the financial agent, superintendent, overseer, or manager for the defendant, the plaintiff had assisted to draw a boat into a dry dock connected with the works. After the boat was in the dry dock, it became necessary to pump out the water.    This was done by means of a pump worked by an engine.    While plaintiff, with others, was engaged in lifting the fly wheel of the engine off its center, said John L. Babbitt carelessly let the steam on, starting the wheel, throwing the plaintiff on the gearing of the wheel, and injuring him.    It was held that Babbitt, in doing this act,—being a part of the details of the ordinary work of getting the boat into the dry dock, and pumping out the water so that it could be repaired,—was the fellow servant of the plaintiff, and not engaged in any act in which he represented the master.    This was held by a divided court, Judges Earl, Danforth, and Finch dissenting. Judge Earl wrote a remarkably strong and clear dissenting opinion, in which he says, at page 526:

"I have made a thorough examination of the reported cases in this country and in England, and think I may safely affirm that there is no case in which the question was involved where this dual relation has been recognized, and the rule thus laid down.    The rule is thus stated in Wood, Mast. & Serv. §§ 438, 451, 453, and there is a dictum to the same effect by Judge Potter in Brickner v. Railroad Co., 2 Lans. 506–516.    The only case I have been able to find in which the precise point was involved and decided is that of Stone Co. v. Kraft, 31 Ohio St. 287.    In that case Kraft was a laborer in a stone

quarry of the company, and one Stone was the agent of the company, and foreman of its quarry. Stone carelessly and improperly fastened certain hooks to a soft stone, for the purpose of raising it with a derrick about which Kraft was also engaged. The court was asked to charge 'that if the injury happened by the negligence of the defendant's foreman when he was doing the work of a colaborer with the plaintiff, and not when in the discharge of his duties as foreman and representative of the defendant, the plaintiff cannot recover, unless the plaintiff shows that the defendant did not exercise reasonable care and prudence in the selection of a foreman.' Both requests were refused, and the refusal was held to be proper. Boynton, J., writing the opinion of the court, said: 'The fact, if it be true, that Stone's negligence in assisting in fastening the hook to the stone to be raised may have caused the injury, and that he was then performing the duty of a common workman, and not those strictly pertaining to the duties of foreman, in no wise relieves the company from liability. If the act done by him had been done under his directions, as he did it, by one of the employés of the company, its liability could not be doubted, and for the reason that the negligent act, although committed by the hand of another, was, in law, the act of the foreman, and consequently the act of the master, and it could be no less the act of the master when performed by the foreman in person.' "

I feel justified in this extended quotation from this dissenting opinion because of its historical importance in connection with this qustion, and its reference to the then only reported decision in this country, within the research of Judge Earl, that had asserted any such doctrine, and also to justify the view that Crispin v. Babbitt should not be followed further than the facts in that case absolutely warrant. In Cullin v. Norton, above cited, where the decedent was employed as a laborer in a quarry, and was engaged in drilling rock for blasting purposes under the direction of the defendant's foreman, and after it was found that a blast in one of the holes had not exploded, the foreman examined it, and found the fuse unconsumed, but failed to remove it, and set another workman to drilling within 2 feet, and directed the decedent to drill at a place some 20 or 30 feet distant; and the fuse caught fire, and the charge in the hole exploded, causing the death of the decedent. It was held that the foreman in this work was a fellow servant of the deceased. It will be seen that in the case of Cullin v. Norton it was only a foreman of the work whose act caused the death, not a general superintendent or vice principal of the defendant. In Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466, plaintiff, who was a fireman on one of the defendant's freight trains, was injured by a collision with another train. Both trains were behind schedule time, and their movements were controlled by special telegraphic orders from one of the defendant's train dispatchers, and the accident was caused by the negligence of one of the train dispatchers in giving those orders. It was held that the defendant was liable, the court holding that the act of this train dispatcher was the act of the defendant, and not the act of a fellow servant of the plaintiff, although the dispatcher and the plaintiff were engaged as the servants of the defendant in the same general business, of operating the defendant's railroad; and it was strenuously contended by the defendant in that case that, as the general term of the Fifth department, from which the appeal had been taken, had held that the train dispatcher was the fellow servant of the plaintiff, the defendant was not liable.

Shear. & R. Neg. § 102, states:

"One to whom his employer commits the entire charge of the business, with power to choose his own assistants, and to control and discharge them as freely and fully as the principal himself could, is not a fellow servant with those who are employed under him; and the master is answerable to all the underservants for the negligence of such managing assistant, either in his personal conduct within the scope of his employment, or in his selection of other servants."

In Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24, defendant was the owner of a coal mine in Putnam county, N. Y., conducted under the management of a superintendent who was invested with the same powers as the superintendent in the case at bar. An accident occurred to the plaintiff, who was an employé of the defendant, and while working in a pit of the mine upon a wall in the course of construction for the purpose, viz. to furnish a place behind which to deposit the refuse material of the mine, was injured by the fall of a mass of rock from an overhanging cliff. The negligence claimed was that the attention of the superintendent had been called to a crack in the wall back of the cliff, and that the superintendent had taken no precaution, though practicable, to support the rock and to prevent the falling of the rock from the cliff. Held, that this negligence of the superintendent was that of the master, and that the master was bound to furnish the plaintiff with a safe place to work, which had not been done in this instance. In McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373, it appeared that the defendant operated, in connection with its railroad, a grain elevator, which was under the entire control of a superintendent appointed by it. The superintendent ascertained that the grain had not been entirely discharged from one of the bins of the elevator, and that the grain was heated, and he knew that when heated it was liable to stick together and adhere to the sides of the bin; also, that when detached it would fall into the bottom of the bin, and jeopardize the life of any one who might be there. He sent McGovern, the deceased (a laborer employed by the defendant to shovel grain), into the bin, through a trapdoor at the bottom thereof, which had been constructed to allow workmen to enter for the purpose of clearing out the bin; having opened the door himself, and placed the ladder in position. The bin might have been examined from the top to ascertain the amount of grain in it, and its location, but the superintendent omitted to do this. After McGovern had entered the bin, the grain fell and buried him, causing his death. Plaintiff was nonsuited. Held error; that the superintendent stood in the place of the defendant, with respect to its servants, and whether the defendant discharged the duty it owed the plaintiff's intestate was a question of fact, to be determined by the jury, as was also the question as to contributory negligence on the part of McGovern. The case at bar is stronger for the plaintiff than the one just cited, for the reason that in the case cited the servant and the superintendent were engaged in the detail of the business of the defendant at such elevator, and not in the work of constructing or repairing a place to

carry on the defendant's business. It is certainly a strong case to sustain the plaintiff's contention here, and received the sanction of the court of appeals long after the dual doctrine in Crispin v. Babbitt had been announced. In Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449, plaintiff, an employé in the defendants' factory, was called from his work to assist in putting up girders to support a roof in another part of a factory. This was not in the line of his general duty, and he had no previous knowledge of the appliances used in the prosecution of the work. He was ordered by the foreman to get upon a platform which was defective and broke. The plaintiff was injured, and brought an action to recover damages therefor. The complaint was dismissed on the ground that the negligence, if any, was that of a coservant, for which the master is not liable. This was held to be error, for which the judgment was reversed. In McCampbell v. Steamship Co., 69 Hun, 131, 23 N.. Y. Supp. 477, the plaintiff was ordered by the defendant's superintendent to truck a load from the deck of a steamer to the dock, over a skid, at a steep angle. The skid was furnished with mouthpieces at each end, so as to follow the swaying of the ship. On starting down the skid, drawing a truck after him, the load on the truck began to move, owing to insufficient means furnished to keep the load stationary, and the plaintiff was injured. Held, in that case, that the superintendent was not a fellow servant of the plaintiff. In Hardy v. Railroad Co., 36 Fed. 657, defendant's yardmaster mounted the switch engine, and, while acting an engineer, directed deceased to assist in uncoupling cars. The latter, while doing so, was killed. Held, that the court properly refused an instruction that while the yardmaster was acting as engineer he was a fellow servant of the deceased, and defendant would not be liable for his acts as such. Though actually engaged as engineer, he was none the less yardmaster, and entitled to be obeyed in the work of making up the train. Where authority is conferred on a servant by the master, over his fellow servants, and his negligence causes an injury to one of them, the master is not exempt from liability, under the rule relating to the negligence of fellow servants. Dock Co. v. McMahon, 30 Ill. App. 358. The fact that the superintendent, after having negligently directed the work, assisted in its performance, does not affect the question of the master's liability. Malcolm v. Fuller (Mass.) 25 N. E. 83. The foreman or boss of a gang and hand car, who furnishes one of the hands with a defective lever wherewith to propel the car, and places him in a dangerous place to operate it, is, pro hac vice, the employer whom he represents; and his knowledge of the premises is to be attributed to his employer, who will be liable to the servant for injuries resulting therefrom. Banks v. Railway Co., 40 Mo. App. 458. In an action for personal injuries, the evidence showed that the plaintiff was 16 years old, and, while working in defendant's machine shop, he was sent to assist in making a wrench. The foreman, knowing the plaintiff's minority and lack of strength, directed him to reach under a heavy trip hammer, operated by a treadle, and seize with a pair of tongs a piece of iron. The iron

was too heavy for the plaintiff to handle, and the tongs fell from his hands, and fell upon the treadle, thus precipitating the trip hammer on plaintiff's hand, and injuring it. Held, that the defendant cannot exculpate itself by claiming that the man who directed the plaintiff while at work was a fellow servant. Yeaman v. Machine Co. (Ind. App.) 30 N. E. 10.

Many similar cases might be cited in other states, but enough states have been taken for that purpose. The plaintiff insists that, under the circumstances of the case, the superintendent had created an unsafe place and unsafe condition where the plaintiff worked at the time he was injured, and that the rule requiring the defendant to furnish a safe place and proper tools for his employés to work at and with has application to this case. Be that as it may, I have reached the conclusion that the question as to whether such place was safe, or as to whether the superintendent was acting for the master in the discharge of the master's duties, were questions for the jury, as held by the court of appeals in the case of McGovern v. Railroad Co., supra, and kindred cases. Wanamaker v. City of Rochester (Sup.) 17 N. Y. Supp. 321, affirmed without opinion 137 N. Y. 529, 33 N. E. 336; McLean v. Oil Co. (Sup.) 21 N. Y. Supp. 874 (plaintiff injured by falling from a scaffold that defendant's carpenter had made, caused by a defective plank); Crowell v. Thomas (Sup.) 35 N. Y. Supp. 936. But assuming that the case of Crispin v. Babbitt, supra, is to be regarded as announcing the law of this state, unshaken by subsequent decisions of the court of appeals, it is easily distinguishable from the case at bar. As we have before said, in that case the superintendent and the plaintiff were plainly engaged in the ordinary work of the servant, in the details of the business. In the case at bar, as we have shown, the servant was taken from his ordinary work, and put by the representative of the master at a work which it is the duty and the province of the master to control and perform; so that this case is within the rule, in all its strictness, asserted by the cases upon which the defendant relies. The motion for a new trial should be granted, with costs to abide event.