60   495
65   623
60   495
68   458
60   495
34ap 78

# ARTHUR J. CONNELLY, Respondent, v. THE MANHATTAN RAILWAY COMPANY, Appellant.

*Evidence — a physician, testifying as an expert, cannot give an opinion, upon the physical condition of a patient, based in part upon the testimony of witnesses.*

Upon the trial of an action for personal injuries alleged to have been sustained by the plaintiff, a physician testified that he first saw the plaintiff about two weeks after the accident, and that he was then suffering from meningitis. He then stated that he had heard the plaintiff's testimony given upon the trial as to the manner of the accident, and was allowed to testify that the injuries received in the manner described by the plaintiff were quite sufficient to produce the results discovered by the witness upon his examination of the plaintiff.

*Held*, that the testimony was improper and should have been excluded.

That an expert witness should not be permitted to give an opinion based upon facts testified to by others, but must, if required, give the precise state of facts, as he supposes and believes such facts to be, upon which he rests his opinion, or must give his opinion in answer to a question stating such facts.

BARRETT, J., dissenting on the ground that the plaintiff's testimony as to the manner of the accident would admit of but one conclusion as to how it happened.

APPEAL by the defendant, The Manhattan Railway Company, from a judgment entered in the office of the clerk of the city and county of New York on the 20th day of December, 1889, in favor of the plaintiff, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $10,000 ; and also from an order denying its motion to set aside the verdict and for a new trial entered in said office on the 6th day of January, 1890.

*Brainard Tolles*, for the appellant.

*Chauncey Shaffer*, for the respondent.

BARTLETT, J. :

There is evidence enough in this case to sustain the judgment, and I should be in favor of affirmance were it not for an error which it seems to me was committed by the learned trial judge in the admission of testimony. Dr. Adolph M. Lesser was examined as a witness to prove the extent and nature of the injuries sustained by the plaintiff. He testified that he first saw the plaintiff about a fortnight after the accident and found him then suffering from

meningitis.    The witness was then asked by Mr. Shaffer, who repre-
sented the plaintiff upon the trial, to what he attributed this menin-
gitis.    This question was objected to by the defendant's counsel on
the ground that it allowed the witness to accept or reject such facts
as he saw fit, and because the form of the question was improper,
and the opinion of the witness should be asked on facts stated, it
being admitted that the witness had no knowledge of the plaintiff
until after the accident.    The objection was overruled and the
defendant's counsel excepted, and the witness answered : " I have
heard a portion of the plaintiff's testimony."    What next followed
is shown by this extract from the appeal book :

"The plaintiff in this case claims to have been thrown down in a
car of the elevated railroad, on his back.    Did you hear his state-
ment of the manner in which he was thrown down ?    A. Yes, sir ;
I heard that."

Thereupon the court put the following question :

" Q. Were those injuries, received in the way in which he has
stated, sufficient to produce the results and conditions you discovered
on your examination."

Counsel for defendant objected to the question on the ground
stated to the question put by Mr. Shaffer to the witness.    The court
overruled the objection and counsel for defendant duly excepted.

"A. It was quite sufficient to produce that injury ; to produce
meningitis.    It was quite sufficient to produce Mr. Connelly's
difficulty."

The witness then went on to say that meningitis was a progressive
disease, and there can be little doubt that his testimony on this sub-
ject tended to augment the damages awarded to the plaintiff.

I do not see how the evidence thus admitted can be distinguished
from that which led to the reversal of the judgment in *Page* v.
*Mayor* (32 N. Y. State Rep., 563) and *The People* v. *McElvaine*
(121 N. Y., 250).    The objection to the question allowed to be
answered was that it permitted the witness to assume for himself,
from the testimony of the plaintiff, the facts upon which he based
his opinion, without informing the jury what he supposed or believed
such facts to be.    No doubt it is not an uncommon practice in
examining medical witnesses to ask them whether they have heard
the testimony of the person who has deposed to the circumstances

under which injuries were received, and if he answers in the affirmative, to inquire as to his opinion upon the testimony so given.   This practice, however, which is usually resorted to for the purpose of facilitating the progress of the trial, can only be justified where no objection is made.   The party against whom the evidence is offered is entitled, if he so desires, to have an explicit statement made to or by the expert witness of the precise state of facts upon which his opinion is based ; and it seems to me clear that this rule was disregarded in the admission of the evidence to which reference has been made on the trial of the case at bar.

For these reasons I think we ought to reverse the judgment and order a new trial.

VAN BRUNT, P. J., concurred.

BARRETT, J. (dissenting) :

This case took a somewhat unusual turn at the trial.   It is an action for damages for a personal injury to the plaintiff while a passenger on one of the defendant's cars.   The injury resulted from a collision of two trains upon the defendant's elevated railroad at Seventy-sixth street and Third avenue, in this city, on the 12th of March, 1888, the day of the " great blizzard."   The defendant, in its answer, denied the fact of the collision and all charges of negligence.   Upon the opening of the trial, however, it asked leave to amend its answer so far as to admit the collision.   It also admitted that the fact of such collision, of itself, entitled the plaintiff to recover damages, and it asked leave to further amend its answer by setting up " the affirmative defense that the accident happened, notwithstanding the exercise of the highest degree of care on the part of the defendant ; that it was an unavoidable accident within the meaning of the law, and was attributable to what is known in the law as an act of God, and could not be prevented by the exercise of that degree of care which the law required of the defendant under the circumstances existing at the time the accident happened."   This motion was granted, and the court allowed the answer to be amended accordingly.   The case was then tried upon the theory that the affirmative was upon the defendant except as to the amount of damages.   Accordingly, the plaintiff contented

himself with proving the fact of the injury and the damages resulting therefrom. Thereupon the defendant took up the burden which it had thus imposed upon itself and gave testimony tending to support the affirmative allegation which we have quoted. When it rested, the plaintiff gave some testimony tending to contradict or explain the defendant's evidence, and thereupon the whole case was submitted to the jury, who found for the plaintiff with $10,000 damages.

The defendant's first point is that it established the fact that the accident was unavoidable and could not have been prevented by the exercise of that degree of care which the law required of it under the existing circumstances, and that, therefore, it was entitled to the direction of a verdict in its favor. We have read all the evidence with great care, and we do not think that this contention is well founded. There was, in our judgment, enough to go to the jury upon these questions. The appellant has presented an able and exhaustive argument in support of this contention, but we think it was competent for the jury, upon the whole case, to say that the self-imposed burden had not been fully met. It was, indeed, a fearful day, and the defendant was entitled to, and doubtless received, the full benefit of this consideration. The storm, however, did not absolve the defendant from its duty to exercise that degree of care which the circumstances called for. It rather demanded more than ordinary vigilance and vigor. We think it was proper for the jury to consider several circumstances tending to show a want of proper care. The car in which the plaintiff was standing at the time of the collision was blocked at the Seventy-sixth street station. It had been standing there for twenty minutes. One of the defendant's rules is that " when trains are blocked, agents will immediately notify the entire line, display the card ' Line Blocked,' and sell no tickets unless passengers insist on purchasing." Was this notice given? If not, why not? And if given, why was a train permitted to proceed, from the Eighty-fourth street station, in the direction of this "block?" Why, at least, were the engineers of that train not notified of the " block " and ordered to proceed from Eighty-fourth street slowly and with care, instead of being directed to skip the Seventy-sixth street station? These are questions which naturally and properly suggest themselves. But they are entirely unanswered

by any testimony offered by the defendant.    The jury had a right to consider the absence of such testimony when they were asked to believe that the defendant had done everything in its power to prevent the collision.    The defendant seems to think that its responsibility rested solely upon the manner in which the colliding train was run.    But it was also called upon to exercise due care (regard being had, of course, to the exceptional circumstances with which it was dealing), in the dispatch and movement of its trains.    Then, as to the running of the colliding train, we think it was for the jury to say whether the engineers did their full duty in the premises.

Upon the testimony of these men the claim is made that every possible agency was brought to bear to prevent the accident, and that the train failed to respond to the brakes and the sand solely because of the down grade and the extraordinary condition of the tracks.    It appeared, however, that the down grade stopped between Seventy-ninth and Seventy-eighth streets, and that from a point about twenty-five feet north of Seventy-eighth street down to the Seventy-sixth street station, and somewhat beyond it, was entirely level.    Considering this fact and also the great force with which the colliding train was driven into the standing car, the jury were justified in doubting the entire accuracy of the testimony given by these engineers, and in attributing the collision to the rate of speed at which the train was run, to the neglect of the engineers to observe the train standing in front of them sooner than they did, and to their failure to apply the brakes in due season.    The great *momentum* attending the collision and the fact that the engineers had been ordered to pass the Seventy-sixth street station without stopping, certainly give color to these considerations.    When, in addition, we find that the engineers are not quite in harmony as to the rate of speed, and are contradicted by one of the plaintiff's witnesses (Jacobs), who says that, notwithstanding the blinding and unparalleled storm, the train did not go slow, but " at the same rate it always goes, the same as they go down every grade," it is impossible to say that there was absolutely no question for the jury.    The schedule time was twelve miles an hour, which is probably what Mr. Jacobs meant by " the same rate it always goes."    One of the engineers (Rhein) says they passed down the grade at not more

than six miles an hour, and that, notwithstanding every effort and the use of every possible appliance, they were still going at the rate of four miles an hour when they struck the standing train. This, too, although a considerable part of the space traversed was upon a level. The other engineer (Ryan) says, on his direct-examination, that at the crest of the hill at Eighty-third street the train was going at between " four and six miles an hour," yet, on cross-examination, he testified that, the rate of speed while he was coming down from Eighty-fourth street to Seventy-sixth street was " between about six and eight miles an hour, as near as I could judge."

There were still other circumstances which might properly be considered by the jury. We need not go over them all. Suffice it to say that upon the whole we think the learned judge was right in denying the motion for a direction and in submitting the question to the jury. It was so submitted in a careful charge, the exceptions to which are not pressed further than by a general protest against the theory that the admission and amendment made at the opening of the trial shifted the burden of proof. But there can be no doubt that the defendant did assume this burden, and that the charge was entirely correct in the view taken of this admission and amendment. The statement in the charge, that the burden was on the defendant to show "that the collision could not have been avoided," should be read in connection with what precedes and what follows. It is apparent that the learned judge conveyed no such idea to the jury as that the defendant was liable as an insurer. He qualified the expression above quoted by the reference to "human care, skill and foresight," which follows it. What preceded accentuates his meaning and renders it quite clear that the jury could not have misunderstood what he sought to convey. At one time he speaks as follows : " You, therefore, see that the burden of proof has been shifted, and it is now upon the defendant, the railroad company, to satisfy you by a fair preponderance of evidence, that the contention that they make that this was not due to any act or neglect or omission or failure to perform the legal duty imposed upon them, that it was from no fault on their part or their servants that this injury resulted."

This is again emphasized by the observation : " I do not mean that you are to determine that question as to whether it could not

be possible upon some view to have prevented the injury, but the test is whether the defendant company used all the skill and care and foresight that human beings ordinarily are endowed with and are called upon to exercise. If they have done that they have performed their duty." It is plain that the jury could not have been misled by the expression objected to.

The remaining question relates to the admission of evidence. The defendant contends that it was error to permit the physicians who examined and treated the plaintiff to state the symptoms of which he complained when they were examining him with a view to diagnosis and treatment. It has always been the rule to admit testimony of this character. (Greenl. on Ev., § 102; Phil. on Ev. [5th Am. ed.], vol. 1, pp. 147–150; *Matteson v. New York Central R. R. Company*, 35 N. Y., 491, 492.)

The patient's " complaints and representations of pain and suffering," as was said in the last case cited, " together with his appearance and conduct, necessarily formed the basis" of the physician's judgment. The rule to which the appellant refers, and which we think it misapplies, relates to similar statements — not in their nature mere exclamations of pain — made to non-professional witnesses. Such declarations have been finally excluded in this State. (*Roche v. Brooklyn City and Newtown R. R. Company*, 105 N. Y., 295.) In the latter case, however, a reservation is distinctly suggested with regard to statements made to a physician for the purpose of professional attendance.

The only serious question as to the admission of evidence is whether the physicians should have been permitted, without a hypothetical question, to state that the injuries received by the plaintiff were sufficient to produce the conditions which they discovered. The accident occurred, as we have seen, on the twelfth of March. Prior to that time the plaintiff was a strong and healthy man. After the accident he suffered more or less for a week or two, when he went to his family physician, who, after an examination, decided that a specialist was required. Thereupon he consulted Dr. Lesser. This was in the early part of April. Dr. Lesser testified that he found the plaintiff suffering from spinal cerebral meningitis, with continuation of changes along the spinal marrow or spinal cord. He was then asked to state the cause of such meningitis. This was

objected to on the ground that the question "allows the witness to accept or reject such facts as he sees fit; that the form of the question is improper, and his opinion should be asked on the facts stated, and as indefinite and uncertain." Although this objection was overruled the question was not answered, the witness simply saying, "I have heard a portion of the plaintiff's testimony." We quote what followed from the case:

"Q. The plaintiff in this case claims to have been thrown down in a car of the elevated railroad, on his back. Did you hear his statement of the manner in which he was thrown down? A. Yes, sir; I heard that."

Thereupon the court put the following question:

"Q. Were those injuries, received in the way in which he has stated, sufficient to produce the results and conditions you discovered on your examination."

Counsel for defendant objected to the question on the ground stated to the question put by Mr. Shaffer to the witness. The court overruled the objection and counsel for the defendant duly excepted.

"A. It was quite sufficient to produce that injury; to produce meningitis. It was quite sufficient to produce Mr. Connelly's difficulty."

The question put by Mr. Shaffer to the witness was that which we have above-mentioned as to the cause of the meningitis.

While it would, undoubtedly, have been better to frame a hypothetical question, we think it was not error, under the peculiar facts of this case, to permit the question as formulated by the learned judge. The witness, it is true, stated that he had heard a portion of the testimony, but that portion, as appeared from the subsequent answer, covered all that the plaintiff had testified to as to the manner in which he was thrown down. Now, there really was nothing more in the plaintiff's testimony on that head than the bare statement that owing to the shock of the collision he was thrown down upon his back. He remembered, and all he did remember was, that he had an umbrella in his hand when he fell; that that umbrella was found under his back after the fall and was then broken in the center; and that when he fell he struck something, but could not tell what. This was the entire story of the fall. It was neither disputed nor modified. No different version of the affair was given

by any one. In itself it admitted of no possible misapprehension or varying hypothesis. It afforded no opportunity for accepting part of the testimony and rejecting such of it as the witness might deem unreliable. If a hypothetical question had been framed, it would have amounted to nothing more than asking the witness to assume that, owing to the shock of the collision, a man fell on his back in a car with his umbrella under him and struck " something."

Indeed, the reference in the question to his testimony was almost superfluous in view of the prefatory statement as to the plaintiff's claims. It was equivalent to asking him " Did you hear the plaintiff's statement that he was thrown down, in a car on the elevated railroad, on his back ? " That was the substance of it, with the single addition of his having struck " something." It would be sacrificing substance to form to hold that such a question, under such circumstances, permitted the witness to usurp the functions of the jury, or to give conclusions based upon his own view of the facts. The simplicity of the single fact testified to by the plaintiff, and the impossibility of viewing such fact in any but one way, save the question from the condemnation of such cases as *Page* v. *The Mayor* (32 N. Y. State Rep., 563), and warrant us in sustaining the judgment, the case being otherwise free from error.

The question put to one of the physicians — " In your opinion, is the disease from which the plaintiff is suffering likely to be temporary or permanent ? "— was clearly objectionable and the ruling favorable to the question erroneous. The error, however, was not prejudicial, as the answer excluded any doubt, uncertainty or mere likelihood. The physician declared that the disease *was* a permanent and progressive one and *inevitably* fatal; that he based his opinion on a large experience in the same kind of cases, and from the fact that when the spinal cord is once diseased it can never recover itself.

The questions put to the non-professional witnesses were unobjectionable. They only called for the plaintiff's appearance, movements, manner of walking, etc. This has always been allowed. The questions put to these witnesses being proper, the plaintiff is not responsible for an inadmissible remark made by one of them, such as that " He looks to me like a physical wreck." That was not called for by the question and was improperly volunteered.

The damages were not, in our judgment, excessive. The plaintiff was severely and permanently injured. He was put to great expense, and his earnings have been diminished.

Upon the whole, we see no reason for disturbing the verdict, and the judgment and order appealed from should, therefore, be affirmed, with costs.

Judgment reversed and new trial ordered.