substance, but it is also bad in form, in that it is indefinite, in being directed to new matter contained in certain paragraphs, without pointing out what new matter is particularly referred to.

Our conclusion therefore is that the judgment appealed from is erroneous, and should be reversed, with costs, but with leave to the plaintiff to plead over on payment of costs in this court and in the court below. All concur.

BARRETT, J. (concurring). I agree with the respondent that although, under section 507 of the Code of Civil Procedure, each defense in an answer must be separately stated and numbered, yet it is not necessary that the formal words, "as a separate defense," should be used. Their equivalent will answer. It is, indeed, sufficient if the new matter be so stated that these formal words, or their equivalent, may fairly be implied. In other words, this requirement of section 507 is satisfied when we find in a separately numbered paragraph an affirmative allegation of exclusively new matter constituting a defense; and this separately numbered paragraph is complete in itself, and is not combined with denials or references to any other defense. Tested by this rule, the demurrer is bad. The first paragraph of the answer is a mere admission. Neither expressly nor impliedly does it purport to be a plea of new matter constituting a defense. The latter observation applies to the second paragraph as well. In this second paragraph we have both admissions and denials. In connection with the admission there is an affirmative allegation, the tendency of which is to qualify the admission, and nullify its effect. This combination of admission and qualifying allegation is in no sense a separate defense to the causes of action set forth in the complaint. It is quite clear that the three paragraphs of the answer were pleaded in their entirety as a single defense. The paragraphs, it is true, were separately numbered,—not, however, because each is a separate defense, but because each relates to a different phase of the complaint. I therefore concur in the reversal.

---

(34 App. Div. 74.)

O'FLAHERTY v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. November 3, 1898.)

1. DAMAGES—FRIGHT.
    Injuries from fright accompanying a physical injury furnish basis for recovery of damages.
2. CREDIBILITY OF WITNESS—INTEREST.
    The testimony of employés whose duty it was to inspect electric wires, one of which broke, that they were properly inspected, is that of interested persons; so that their credibility is for the jury.
3. NEGLIGENCE—ELECTRIC WIRES.
    Plaintiff having been shocked by electricity coming from the ground after it escaped thereto from one of defendant's electric wires after it fell, the jury were justified in holding that the automatic device used by defendant was not properly adjusted, or was not in proper working order; there being evidence that, if it was, it would throw the current off the wire the moment it came in contact with the ground.

**4. OPINION EVIDENCE.**

The inquiry being, not whether plaintiff's existing conditions might have been produced by the injury, but would her present condition be permanent, a witness, after detailing all the conditions he found present, may give his opinion, without giving a history of the case.

Appeal from trial term.

Action by Rose T. O'Flaherty against the Nassau Electric Railroad Company. From a judgment for plaintiff on a verdict, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Clarence J. Shearn (Henry Yonge, on the brief), for appellant.

Thomas E. Pearsall, for respondent.

HATCH, J. Although the record in this case is somewhat voluminous, in its disposition but little discussion is required. It is undisputed that the defendant's trolley wire broke, and one end of the broken piece fell to the ground. The plaintiff, at the time when the wire broke, was passing along the street, as was lawfully her right; and at about the time the wire fell she was in its immediate vicinity. The evidence satisfactorily discloses that she received a shock of electricity sufficiently violent to throw her to the ground, and that upon regaining her feet she was again shocked, and was again thrown down. While much argument by the appellant is devoted to showing that the plaintiff was not in the vicinity where the wire grounded, yet plaintiff's testimony was that something struck her upon the back, that she received a shock, and the testimony of an eyewitness was that the wire was near her when it fell. That she was thrown down twice is not disputed, and it was for the jury to say whether her fall was occasioned by electrical shock. Measurements and statements of witnesses as to particular places where the wire struck or remained upon the ground are not conclusive. It is not entirely clear from the testimony whether she received the shock by coming in contact with the wire, or whether she occupied such a position as caused her body to form a circuit through which the electricity, flowing from the broken wire, or some part of it, passed. Either conclusion, we think, is permissible from the testimony. The injuries which the plaintiff thus received were serious, and, as the evidence tended to establish, permanent, in character. While it is true that injuries arising from fright alone do not authorize a recovery, yet, where there is physical injury accompanying fright, it furnishes basis for a recovery of damage. Here the jury were authorized to find the existence of electrical shock and fright produced by it, the whole causing plaintiff's present condition. The falling of the trolley wire into the street raised a presumption of negligence on the part of the defendant, and, in the absence of contributory negligence, —of which no claim was made that it existed,—created liability for the injuries thus sustained, unless the defendant satisfactorily explained the conditions so as to overcome the presumption of negligence which thus arose. Jones v. Railway Co., 18 App. Div. 267, 46 N. Y. Supp. 321. The defendant claims that by its proof it suc-

cessfully met the presumption, and established by conclusive evidence that it was without fault. In this regard it is contended that its evidence established that it used, in the construction of its trolley wire, and the supports for the same, such material as is commonly in use for such purpose, and the best which the market affords; and that its method of construction and supports was in accordance with the best plan which practical use has demonstrated to be proper. It is also contended by the defendant that, in addition to thus establishing the use of proper material and care in construction, it had a system of inspection under which its trolley wire and the supports were carefully examined at least once in every four days; and, in addition thereto, that the wire which broke, and the supports in connection therewith, were inspected the day before the wire broke, and found to be in perfect order. We think there are two considerations appearing in the testimony which answer this claim. The system of inspection which the defendant claims to have existed rests for its support upon the testimony of interested witnesses, charged with the duty of discharging this obligation. Under well-settled rule, therefore, this testimony was that of interested persons, who had, or might have, a motive for shielding themselves from blame. Under such circumstances their credibility was involved, and became a question to be determined by the jury. Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870. In addition to this, it was disclosed by the testimony that the defendant employed a device called the "breaker system," which, when properly constructed, and in proper working order, would throw the current off the wire the moment it came in contact with the ground. This device was explained by Prof. Sheldon, an expert witness called by the plaintiff, whose testimony upon this subject is adopted by the defendant as correct. This witness testified that this breaker would have the effect claimed for it if it was properly adjusted. As we have before observed, the jury were authorized to find that the plaintiff received her injuries by reason of the passage through her body of the current of electricity coming from the ground after the same had escaped thereto from the broken wire. Upon this subject, Prof. Sheldon said:

"The trolley wire and the system of feeders constitutes a good conductor. The rail and the supplementary conductors for return also constitute a good conductor. The wire striking the ground, as between it and the rail, between its terminal and the rail, a fairly large resistance, if the human body, through the shoes, through the feet, should be interposed between those two points, the rail and wire,—the wire should strike the ground,—the human body offering resistance about the same as that of the earth, would divide the current with the earth in returning it to the rail."

The jury were therefore authorized, upon this testimony, to find that the automatic device was either not properly adjusted, or was not in proper working order; for, had it operated properly, the current would have been immediately cut off, and thus none passed through the body; whereas it continued to escape for a period long enough to twice shock the person. Under such circumstances the jury were permitted to find that the condition of the wire and its appliances was not consistent with the testimony of the defendant,

and therefrom conclude that the defendant was guilty of negligence in not discharging its duty.    Scherer v. Manufacturing Co., 86 Hun, 37, 33 N. Y. Supp. 205.    It follows, therefore, that this claim of the defendant may not be sustained.

Nor do we think that error was committed in permitting the witness King to testify as to the permanent character of the plaintiff's injuries.    He was not called for the purpose of testifying whether such condition as he found present when he made his examination was the result of the injuries alleged to have been received.    Consequently, a history of the case had little or no bearing as forming a basis for the expression of his opinion.    He detailed at length all of the conditions which he found present, and these conditions evidently formed the basis from which he reached his conclusion.    The case is therefore different from Connelly v. Railway Co., 60 Hun, 495, 15 N. Y. Supp. 176, and Page v. Mayor, etc. (Sup.) 10 N. Y. Supp. 826. In each of those cases the inquiry was directed to whether the existing condition might have been produced by the injury, while in the present case the inquiry was, would her present condition be permanent or not?    A history of the case was, therefore, not essential, and the witness stated fully the conditions which he found.    In People v. McElvaine, 121 N. Y. 250, 24 N. E. 465, the question was somewhat different.    There the issue was as to the sanity of the defendant at the time of the commission of the crime, and the witness was permitted to answer without disclosing the facts upon which he based his conclusion.    It is apparent that such case has no application to the present one.    In addition to this, the defendant has not raised the question which it seeks to present.    No objection was made to the statement that he "got a history of the case," or to the question which produced such answer.    The objection interposed was upon the ground of incompetency, while the exception presents the additional ground that it is incompetent and immaterial.    The testimony was competent, because directed to her existing condition, and the witness was competent to testify, as he had qualified as an expert. The testimony was material.    No suggestion appears in this objection that the witness was not disclosing the facts upon which he based his opinion, and the court was left clearly in the dark, as we should now be except for the insistence of counsel that any such point as now urged was intended to be presented.    This point, even if good, which it is not, would not now be available.

It follows that the judgment should be affirmed, with costs.    All concur.