## SMITH v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   April 24, 1903.)

1. USE OF CITY STREET — LIVE ELECTRIC WIRE — CAUSE OF INJURY — JURY
   QUESTION.
       The absence of evidence that a live electric wire came into actual
   contact with plaintiff or his horse will not, as a matter of law, preclude
   recovery for injuries to them, the evidence showing that the horse had
   fallen into a pool of water and that plaintiff had gone to its assistance,
   when a loose wire, blown against a' trolley pole, caused a series of
   electric discharges, resembling explosions, and lighting the pole from top
   to bottom.

2 SAME—OPERATION OF ELECTRIC RAILWAY—ADMISSION IN PLEADINGS.
       Plaintiff, injured by a live trolley wire, alleged, and defendant ad-
   mitted, that on a day named defendant "was operating a surface or street
   railroad propelled and worked by electric power" on a certain street.
   Held an admission by defendant that it was using the appliances and
   mechanical devices necessary for the operation of its electric railway.

8. SAME—REQUIREMENT OF DUE CARE.
       A company merely operating an electric railway is required to use the
   appliances with the same degree of care as if they had been built, and
   were actually owned, by it.

4. SAME—RES IPSA LOQUITUR.
       The doctrine of res ipsa loquitur is applicable to an injury from a
   broken live wire belonging to an electric railway system.

Appeal from Trial Term, Queens County.

Action by Charles K. Smith against the Brooklyn Heights Railroad
Company, continued after plaintiff's death in the name of Christina K.
Smith, as his administratrix.   From a judgment for defendant, entered
on a dismissal of the complaint at the close of plaintiff's case, she ap-
peals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and HOOKER, JJ.

J. Bohmbach, for appellant.
I. R. Oeland, for respondent.

HOOKER, J.   This is an action to recover for the loss of a horse,
and for injuries to the person of the plaintiff.   Plaintiff has died since
the trial, and the action has been continued as to the cause of action
which survived him.   The complaint was dismissed at the close of the
plaintiff's case, and he appealed.

That portion of the plaintiff's evidence which is material is as fol-
lows:

"As I was driving along there on Myrtle avenue a car came down, and I
pulled out for it on the right side, and as I pulled out the horse went away
from me quite lively.   I waited a second or two, and of course the horse
dropped right in a pond of water.   *   *   *   I waited a little while, and the
horse didn't make any move whatever, and I had to get down there and get
him up.   I got down to the horse's head, went along to the horse, when there
was an explosion which made the fire fly from the wire which crosses from
the trolley pole to the center wire, and the pole was white from top to bottom
with one electric light.   As the wire was across, the fire flew right down at
each explosion afterwards.   I was not able to get up.   *   *   *   Q. Tell the
jury what you saw in regard to any wires that were there.   A. Yes, there
were, just one; one kind of spit fire at every explosion.   Q. What about it

being broken? A. There was only one that I seen. This wire was hanging down from the center wire over to the pole that holds the center wire up. It was hanging down far enough to catch the pole and the horse. * * * it was a dark, stormy night; heavy, stormy. Yes, there was wind. Yes, quite a heavy wind. * * * Nothing struck me that I know of. * * * Every time that wire that was broke and was hanging down touched the pole the explosion went off, and the fire went down from the cross wire, and the pole was lit from top to bottom. There was an explosion every time the wire touched the pole."

The defendant was operating a street railway in the thoroughfare in which this accident took place. The plaintiff got his horse home, and it died immediately after arriving there.

The respondent contends that there is not sufficient evidence to make out a cause of action against the defendant for the negligent killing of the horse, in the absence of evidence that horse or man was in contact with the wire. Hart v. Hudson River Bridge Co., 80 N. Y. 622, is authority for the proposition that juries are the triers of fact, and that they are to draw the facts and inferences to be had from the evidence, provided there is a reasonable doubt; that the court is not to resolve the doubt against the plaintiff; and this language was used:

"When, from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them; that is to say, when the process is to be had, at a trial, of ascertaining whether one fact had being, from the existence of another fact, it is for the jury to go through with that process."

It is true that there is no positive evidence in the case that the horse was struck by the wire or ran into it, but the wire was there, adjacent to the horse, when the plaintiff came down out of his wagon, and he became affected in a manner much similar to that which apparently affected the horse. It is true that the horse might have slipped down and injured himself in that way, and not have come in contact with the wire or received the electric current at all, or the horse may have been stricken with some physical infirmity which resulted in his death later, independent of the electric current. These are possibilities, however, and they comprise the element of doubt. It is a matter of common knowledge that electricity received through the body is dangerous, and sometimes fatal, and that, when wires highly charged with it become grounded, circuits of the deadly current are sometimes numerous in the immediate vicinity. Nor is it without doubt, from the state of the evidence, that the plaintiff may have fallen to the ground and been unable to rise by reason of some physical cause, or through fright at the display of electrical phenomena and the raging of the storm. It is not required of the plaintiff to exclude all presumptions against his theory; it is sufficient if he show facts and circumstances tending toward a greater probability. The doubt is for the jury's consideration, and it will give it such force as it deserves in drawing the inferences.

No proof was introduced to show that the defendant had built or actually owned the wires in question and the poles to which they were attached, and defendant claims that without such proof the plaintiff is not entitled to recover. The second paragraph of the complaint, however, admitted by the answer, reads as follows:

"That heretofore, on or about the 15th day of September, 1900, the defendant, * * * was operating a surface or street railroad propelled and

worked by electric power * * * through and upon Myrtle avenue, a public street and highway, * * * and the said railroad was then and there laid, run, and operated on, upon, and along said street or highway."

This is an admission by the defendant that it was using the appliances and mechanical devices necessary for the operation of its electric railway, and it was required to use such appliances with the same degree of care as if they had been constructed by the defendant itself. The defendant is liable for any negligence in this respect, so far as the facts presented by the record here are concerned, to the same extent as if the ownership had been its own.

This brings us to a consideration of the only other point urged by the respondent, namely, that the plaintiff has failed to show any negligence on the part of the defendant. We think that the doctrine of res ipsa loquitur is applicable to the facts proved by the plaintiff upon the trial. An extended discussion of the applicability of this rule is now unnecessary, for the reason that, in numerous cases in both the First and Second Departments, it has been held that the falling of a trolley wire into the street, or the presence therein of broken trolley wires, raises a presumption of negligence. "The falling of the trolley wire into the street raised a presumption of negligence on the part of the defendant, and, in the absence of contributory negligence, as to which no claim was made that it existed, created a liability for the injuries thus sustained, unless the defendant satisfactorily explained the conditions so as to overcome the presumption of negligence which thus arose." O'Flaherty v. Nassau Electric R. R. Co., 34 App. Div. 74, 76, 54 N. Y. Supp. 96. See, also, Jones v. Union Railway Co., 18 App. Div. 267, 46 N. Y. Supp. 321; Caglione v. Mount Morris E. L. Co., 56 App. Div. 191, 67 N. Y. Supp. 660; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530.

We think that it was error for the trial court to nonsuit the plaintiff, and the judgment should therefore be reversed, and a new trial granted, costs to abide the event. All concur.