ELIZABETH HOFFMAN, Respondent, *v.* FLORIDA EAST COAST HOTEL COMPANY, Appellant.

First Department, April 4, 1919.

Negligence — liability for personal injuries sustained by maid employed by guest at defendant's hotel from stepping into and falling down elevator shaft — when witnesses, although in employ of defendant, not interested — erroneous instruction to jury.

In an action by a lady's maid employed by a guest at a hotel owned and operated by the defendant, for personal injuries sustained from stepping into and falling down an elevator shaft while returning from a linen room where she had been sent by her mistress, the plaintiff claimed that the defendant's housekeeper accompanied her out of the room and told her to take the elevator. The only negligence with which defendant was charged was the violation of its common-law duty owing to the plaintiff to guard the elevator shaft, or to give her notice or warning, or by affording sufficient light to enable her in the exercise of reasonable care to discover that the elevator was not at the floor, and that the shaft was open and unguarded.

Testimony having been given in behalf of defendant on the issue as to whether its housekeeper suggested that the plaintiff take the elevator, by an employee in charge of the linen room, by a porter employed by defendant but not in its employ at the time of the trial, and by a head porter employed by defendant but not connected with it when he testified, it was reversible error for the court to decline to instruct the jury that said witnesses were not interested, especially since the negligence with which the defendant was charged did not implicate any of said witnesses and two of them had no duty to perform in the premises.

The mere fact that a witness was at the time of an accident in the employ of a party does not make him an interested witness.

It would have been proper for the court to leave it to the jury to determine whether the relations that existed between the witnesses and defendant had a tendency to bias the witnesses in its favor, but the jury were not warranted in finding that the witnesses were interested in the determination of the issues.

APPEAL by the defendant, Florida East Coast Hotel Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of May, 1918, upon the verdict of a jury for $16,500, and also from an order entered in said clerk's office on the 24th day of May, 1918, denying defendant's motion for a new trial made upon the minutes.

*William Dike Reed* of counsel [*George A. Steves* and *William S. Shelton* with him on the brief], for the appellant.

*James B. Henney* of counsel [*William A. Hyman*, attorney], for the respondent.

LAUGHLIN, J.:

The recovery was for personal injuries sustained by plaintiff from stepping into and falling down an elevator shaft, about eight o'clock in the morning on the 23d of February, 1917, at the Breakers Hotel, Palm Beach, Fla., which the defendant evidently owned and operated in connection with its railroad. The plaintiff was about thirty-three years of age and was employed as lady's maid by one of the guests of the hotel. She arrived at the hotel a day or two before the accident. Her mistress desired some linen sheets to cover her gowns and instructed plaintiff to obtain them. After breakfasting in the servants' dining room on the ground floor, the plaintiff met Mrs. Baldwin, the housekeeper, in the hall and asked for the linen and was informed that she could obtain it at the linen room. The baggage room of the hotel was on the ground floor and was thirty feet in length from east to west, and twenty feet in width north and south. In the northeasterly corner of the baggage room there was an inclosed elevator shaft in which a general service elevator for conveying baggage and carrying the employees was operated, generally by an elevator boy, but at times by the porters. It was a cable elevator and was inclosed at each end but open at the front and rear. At the baggage room floor two iron doors, together of the width of about five feet, painted black, were attached to the westerly side of the shaft and opened into the baggage room. Access to the elevator at the upper floors was from the east. It was also used by invalids in chairs and by maids for taking baby-carriages up and down. There is some testimony to the effect that it was also used by maids of guests carrying linen, but they were at liberty to use the passenger elevators located in another part of the hotel. It is to be inferred that the elevator was wider than the doors, but its width is not specified. The interior of the shaft was lined with lead-colored galvanized iron or tin. The elevator

doors were usually closed when the elevator was not at that floor, but at times when it was in use in handling a large amount of baggage they were left open. It does not appear that the elevator was being so used at the time of the accident; but it was at an upper floor and the doors were open. A covered but not inclosed porch fourteen feet in width extended along the northerly side of the baggage room from the northwesterly line thereof about eighteen feet, and then came an inclosed linen closet which, according to some of the testimony, occupied part of the northeasterly corner of the baggage room, extending along the northerly end of the elevator shaft and probably extending northerly of the baggage room and being of the dimensions of about twelve feet east and west, and ten feet north and south. It had two large outer windows toward the north, and a door opening toward the south into the baggage room two feet west of the westerly wall of the elevator shaft. Thus, it will be seen, the doors to the elevator opened toward the west, and the door to the linen closet toward the south only a few feet diagonally northwesterly therefrom. There were two windows and a large door in the northerly side of the baggage room. Although there is a conflict in the testimony with respect to there being another window in the baggage room, and with respect to the weather and the conditions of light in the baggage room at the time of the accident, I think the preponderance of the evidence shows that there was another window in the southerly side of the baggage room, that it was a bright, warm, sunny day, and that all points in the baggage room were plainly visible from any other point therein. A corridor extended along the easterly end of the baggage room, with swinging doors leading into the baggage room a few feet to the south of the elevator shaft. It was necessary to pass through this corridor and these doors and across the northeasterly corner of the baggage room and around the elevator shaft and in front of the door thereof to reach the linen room from the ground floor of the hotel. The plaintiff had never been in the baggage room or to the linen room before, and did not know where they were. At this point there arises a conflict in the evidence. The plaintiff testified that the housekeeper accompanied her and led the way. The housekeeper denies

that she accompanied the plaintiff, and did not remember whether she pointed out the way. The plaintiff, however, concededly went to the linen closet by the route described and was there given three or four sheets by Miss Rowe, who was in charge and who testified that the housekeeper arrived there shortly before the plaintiff came, and that when plaintiff came the housekeeper directed that the linen be given to her. The plaintiff testified that she put the sheets over her arm and started to return the way she came and was looking and proceeding toward the doors through which she had entered the baggage room when the housekeeper, who had followed her out of the linen room and was a little behind and to the right, took hold of her arm and said: " Take this elevator as you have the linen." The housekeeper denies that she accompanied the plaintiff out of the linen room or suggested that she take the elevator; and in that she is corroborated by Miss Rowe, who says that the housekeeper remained in the linen room with her until after the accident. The plaintiff's case depended upon the truthfulness of her testimony on this point and with respect to the amount of light and the circumstances under which she erroneously assumed that the elevator was standing at that floor to receive passengers. On the point as to whether the housekeeper suggested that she take the elevator, the plaintiff is uncorroborated. It is to be inferred from the plaintiff's testimony that she had not seen the elevator before; but she did not say whether on passing it on her way to the linen room she had noticed the inclosure around the elevator shaft. She admitted that the linen room was very light and that her vision was not affected on going from it into the baggage room; but she testified that the corner of the baggage room near the elevator was quite dark and that there was no artificial light in the baggage room or at the front of the elevator or where she stepped. Her testimony, however, indicates that it was sufficiently light for her to see the faces of a white man in a dark blue uniform, whom she took to be the elevator operator, and of a waiter, and to see the floor and partition walls, for she says that when the housekeeper so suggested that she take the elevator she turned and looked and walked toward it; that she was then only about two or three steps, or three and a half feet, or

three to four feet from it, and that *the doors of the elevator were open;* that she saw the man in the dark blue suit standing near the elevator and he said "good morning" and stepped aside; that a waiter with a tray, who was passing in front of her toward the elevator, also stepped aside, saying to her, "I beg your pardon," and that she then "looked at the elevator" and took one step and went down the shaft. Although she testified on direct examination that the elevator doors were open and that she did not see any doors, barriers or chains across the opening into the shaft, she admitted on cross-examination that she did not see any elevator doors and did not know whether there were any on the elevator. The only testimony of an eye witness offered by the plaintiff to corroborate her version of the accident was a waiter, who says he had a tray on his head and another in his hand, intending to take the elevator when it came down, and that he stepped aside for plaintiff, as she claims, and that a porter did likewise, and that it was quite dark. All of the witnesses for the defendant, however, say the waiter was not there at all, and there was a very sharp conflict in the evidence with respect to the light. All witnesses called by defendant, many of whom were employees but had no duty in the premises, and there were several, testified that the baggage room was very light; that all windows and doors, including that into the linen closet, were open, and that the elevator shaft and elevator doors were visible from any part of the room. One of defendant's witnesses, Robert Klingen, testified that he was in the southwest corner of the room, which would be the farthest point from the elevator, and that he could plainly see the opening into the shaft. The testimony of the waiter called by the plaintiff was to the effect that the doors and windows were not open; but in view of the fact that it was a typical warm summer day, that is improbable. The man the plaintiff erroneously took to be the elevator operator evidently was defendant's witness John H. Varley, a porter, who was in no way responsible for the accident and was not in defendant's employ at the time of the trial. He testified that he was standing about eight feet from the elevator shaft and that when he saw the plaintiff turn toward it he shouted to her, "Look out;" and in this he is corroborated by another

disinterested witness, who says that he also called out to her, "Hey," but that it was too late.

The only negligence with which defendant was charged was the violation of a common-law duty owing to the plaintiff to guard the elevator shaft, or to give her notice or warning, or by affording sufficient light to enable her in the exercise of reasonable care to discover that the elevator was not at the floor and that the shaft was open and unguarded. The testimony, therefore, with respect to the condition of the light bore directly on both issues of negligence. The court instructed the jury that if there was sufficient natural light in the room to enable one exercising reasonable care to observe "that the elevator was up," the defendant would not be liable. Important testimony was given in behalf of defendant on the issue as to whether the housekeeper followed the plaintiff out of the linen room and suggested that she take the elevator, by Miss Rowe, who was in charge of the linen room, by Robert Klingen, then employed by defendant as porter in the baggage room but not in its employ at the time of the trial, and by Michael J. Varley, then employed by defendant as head porter but not connected with it when he testified. The court charged the jury generally with respect to their duty in weighing the testimony of interested and biased witnesses and those who willfully testified falsely. Counsel for defendant requested the court to instruct the jury that these witnesses were not interested. The court declined so to charge and left it to the jury to say whether or not they were interested, and defendant excepted. This was error. The negligence with which the defendant was charged did not implicate any of these witnesses; and two of them, at least, had no duty to perform in the premises. The mere fact that a witness was at the time of an accident in the *employ* of a party does not make him an interested witness. It would have been proper for the court to leave it to the jury to determine whether the relations that existed between the witnesses and defendant had a tendency to bias the witnesses in its favor, but the jury were not warranted in finding that the witnesses were interested in the determination of the issues. (*Essig* v. *Lumber Operating & Mfg. Co.*, 183 App. Div. 198.)

This was not the only error prejudicial to defendant com-

mitted on the trial. Notwithstanding the fact that the last testimony given by the plaintiff with respect to the elevator doors was that she did not see them or know whether or not there were any, the court, at the request of counsel for the plaintiff, charged that the jury might consider " whether or not the open doors leading into the elevator were an indication that the elevator was there present, and could be entered; " and defendant excepted. The exception to that charge was well taken, for if she did not see the doors and that they were open, surely she did not rely on their being open as an indication that the elevator was there. Like error to which defendant excepted was committed in charging, at plaintiff's request, that " an elevator entrance is not like a railroad crossing at a highway, supposed to be a place of danger to be approached with great caution, but on the contrary it was proper for the plaintiff to assume, if the doors were open, and if you find there was an invitation for her to use the elevator, that it was a place that might be safely entered, without stopping to look, listen or make a special examination." The court also erred in refusing to charge, as requested by defendant, " That if the plaintiff was unable to perceive existing conditions at the elevator opening, that inability imposed upon her the duty of exercising greater caution."

We merely point out errors sufficient to require a new trial, but from our failure to discuss other alleged errors it is not to be assumed that we approve all other rulings made on the trial.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

SHEARN, J., concurred; CLARKE, P. J., PAGE and MERRELL, JJ., concurred on the ground of error in refusing to charge as requested in regard to interested witnesses.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.