Jasen, J.
(dissenting). A reversal and new trial is required here solely upon the ground that the trial court’s instructions to the jury with regard to the interest of witnesses and the issue of intoxication as contributory negligence were erroneous.
In this negligence action, the plaintiff sought to recover damages for severe physical injuries he sustained when he was struck by a New York City Transit Authority subway train while he was lying on the tracks at a station in the early morning hours on a holiday weekend. The plaintiff claimed that he had been assaulted and thrown onto the tracks while waiting for the train and that he was unable to extricate himself before the train approached. He alleged that the motorman failed to have the train under reasonable and *146 proper control and failed to maintain a proper lookout, and that he had not been negligent, he could have brought the train to a halt before striking the plaintiff.
The first error concerns the court’s instruction as to interested witnesses. The Authority called as witnesses several of its past and present employees. These included the motorman, who was no longer an employee when the case was tried, a motorman instructor, a police officer and an engineer, all of whom were still employed by the Authority. To prove that the motorman had exercised due care, it was crucial that the Authority, among other things, establish the precise point along the length of the platform where the plaintiff had fallen, the point from which an object or a person on the tracks could be first seen by a motorman in an approaching train as it came out of a curve and into the station, and the emergency stopping distance from that point at normal speeds. The testimony given by plaintiff’s paid expert, himself a former motorman, and by the Authority’s employee-witnesses did not agree in all substantial aspects. Hence, these matters formed the crux of the jury’s fact-finding assignment.
Against this background, the court’s erroneous instruction as to interest of witnesses significantly increased the likelihood that the Authority’s version of the facts and circumstances presented in this unfortunate accident would be discredited by the jury. The court charged on the interest of witnesses as follows: "Now, in this case the plaintiff is an interested witness because he seeks to recover. The witnesses, all employees, including Sigreti [the motorman], even though he’s no longer in the employ of the Transit Authority, is an interested witness because he’s charged with negligence. Therefore, he’s an interested witness when he comes in and denies his conduct and his act. The expert of the Transit Authority is an interested witness because he works for the Transit Authority. Mr. Doty [plaintiff’s expert] is an expert and is a disinterested witness.” (Emphasis added.) There can be little doubt that the jury would interpret this instruction as requiring that they view all of the Authority’s employees as interested witnesses.
Certainly, the motorman, Sigreti, as an actor in the transaction out of which the cause of action arose, but he alone among the Authority’s employees, was an interested witness because of his motive to shield himself from blame. (O’Flaherty v Nassau Elec. R. R. Co., 34 App Div 74, 77, affd 165 NY *147 624; Volkmar v Manhattan Ry. Co., 134 NY 418, 422.) However, the mere existence of an employer-employee relationship between the Authority and the other witnesses does not, as a matter of law, make these employees interested witnesses. (Hoffman v Florida East Coast Hotel Co., 187 App Div 146, 151; Della Croce v City of New York, 3 AD2d 920; see Nose-worthy v City of New York, 298 NY 76, 79.) That is not to say that the jury is to disregard the existence of such an employer-employee relationship. It would have been proper for the trial court to allow the jury to determine whether this relationship biased or influenced these employees who testified on behalf of the Authority. (Hoffman v Florida East Coast Hotel Co., 187 App Div 146, 151, supra; see NY PJI [2d ed] 1:92.) Even the majority at the Appellate Division acknowledges the general rule that the question whether the relationship gives rise to bias is for the jury, but states incorrectly, as can be seen from the instruction quoted above, that the court did not charge that all employees of the Authority were interested witnesses. The fact that the court stated, as part of the same instruction, that plaintiffs retained expert was disinterested, only makes the error more pronounced.
In addition to incorrectly instructing the jury with regard to the interest of witnesses, the trial court also improperly charged the jury, in its supplemental instruction, on the issue of intoxication as contributory negligence. The plaintiff had originally grounded his case alternatively on a "last clear chance” theory. However, that cause of action, and also a third cause of action based on alleged inadequate police supervision of the subway station, were dismissed upon the Authority’s motion.[1] Therefore, as it went to the jury, the case involved only the Authority’s alleged negligence. Accordingly, the plaintiff, to establish his cause of action, was required to prove his freedom from contributory negligence. The Authority did not accept the plaintiff’s claim that he had been assaulted and thrown onto the tracks; rather, it sought to establish that the plaintiff had been intoxicated and for that reason alone fell off the station platform, and that this constituted sufficient contributory negligence to defeat his cause of action.
In its initial charge, the court did instruct the jury as to contributory negligence, albeit in summary form. However, *148 the court later committed serious error when it improperly restricted the proof that the jury could consider as to the plaintiffs intoxication and contributory negligence. After deliberating for nearly three hours, the jury, obviously troubled by the intoxication question, returned to the courtroom for additional instructions. Four specific questions on this crucial issue were asked by the jurors. In response to the last of the four questions, the court said: "Unless you think he was drunk and there’s proof that he was drunk you may not find him drunk. The only evidence in this case is [that] he had three drinks, and [Patrolman] Alcindor says he couldn’t say he was drunk, and nobody else in the case says he was drunk. That’s the only evidence in this case. ” (Emphasis supplied.) Seven minutes later, the jury returned its verdict, 10-2, in favor of plaintiff. As a result of this supplemental instruction, the jury was not permitted, even if it had been so inclined, to find, from the total proof presented, that plaintiff had been intoxicated and contributorily negligent at the time of the accident. Certainly, there was sufficient evidence from which the jury could infer, if it so chose, that the plaintiff had been intoxicated. For some considerable time preceding the accident, plaintiff was drinking. He visited at least three bars, remaining in the last one for an hour after the mandated 4:00 a.m. closing hour. During this extended period, he was drinking and consumed, by his own admission, at least three drinks of hard liquor. He also claimed to have entered the subway station through an entrance which was locked at the time of the accident. On these undisputed facts, it was reasonable to find, and the jury was entitled to find, that the plaintiff fell to the tracks as a result of intoxication even though there was no direct testimony offered that "he was drunk”, as would have been required under the court’s supplemental instruction. In limiting the jury to consider only the admission of the plaintiff that he had three drinks on the question of intoxication and contributory negligence, the court, in this close case, improperly restricted the proof that could be considered by the jury on this crucial question.
The record also discloses that the trial jury at the separate trial to determine the amount of damages asked the court for additional instructions "as to taxability of the award to the plaintiff.” Rather than answering the question directly, the court responded: "Don’t concern yourselves with that. It forms no part of your deliberations. It is not an element to be *149 concerned by you. Do not consider that at all.” The Authority took an exception to that response.
Whether a jury should be apprised that awards made in personal injury actions are not taxable under the Federal and State income tax laws is a question that I believe merits comment. The courts, both State and Federal, which have considered the question, have answered it in different ways.[2] Although it appears that most of the State and Federal jurisdictions adhere to the rule that it is error to inform the jury that a personal injury award will not be taxable, a majority of the commentators seem to favor an appropriately worded charge.[3]
While it may be said that present day jurors have displayed much sophistication by carrying out their responsibilities as triers of the facts, it does not follow that the average citizen and juror is generally aware that personal injury awards are specifically exempt from taxation. More likely, it is reasonable to assume that the average juror would believe such an award is subject to income taxes. Perhaps this erroneous belief results from the widespread attention given by the media to the sums of money, often of windfall proportions, that are won in the New York State lotteries and various contests conducted on television. An empirical survey would no doubt show that the vast majority of our citizens would expect such windfalls to be taxed. This may be no more than an outgrowth of the modern fact of life that all governments are endlessly undergoing one fiscal crisis after another, or so it seems, and that as a result, the taxing authorities will of necessity permit very little, if anything, to escape taxation. Hence, the pervasive import of taxation — Federal, State and local — in the lives of our citizens, and the public’s awareness of it, cannot be *150 seriously disputed. Against that background, I believe the average citizen would expect that an award made in a personal injury case would be subject to income taxation, particularly where at least a portion of that award represents compensation for the loss of past and future income.
Since it is an elementary rule of damages that the purpose of personal injury compensation is neither to reward the plaintiff nor to punish the defendant, but solely to replace plaintiff’s losses, I believe a rule in personal injury actions requiring the Trial Judge to instruct the jury that any award made by them will not be subject to Federal or State income taxes would dispel any misconception in the minds of the jury that the award is subject to income taxes. Only when a jury is specifically instructed that the award will not be taxed can we be certain that it will not speculate that the award is subject to income taxes and increase the award significantly to compensate for such tax loss. It should also be said that the instruction would not require the introduction of any additional evidence" or open the trial to matters irrelevant to traditional issues in personal injury litigation. All that would be required is an instruction that any award made to the plaintiff as damages is not subject to Federal and State income taxes, and the jury should not consider such taxes in fixing the amount of any award made to the plaintiff. In other words,, a jury should be told that when it arrives at an amount of damages under the court’s charge, it is not to add any sum of money to that amount for Federal and State income taxes.
I recognize that my approach to this problem represents a new view in our court and, therefore, I would not hold that the failure of the Trial Judge to answer the question asked by the jurors, as to the taxability of the award, was error.

. On appeal, the plaintiff did not challenge the dismissal of those causes of action.

. For compilations of the pertinent cases, see Ann., 63 ALR2d 1393; Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St LJ 212, 213, n 3.

. 2 Harper & James, Law of Torts, § 25.12, pp 1327-1328; Bums, A Compensation Award for Personal Injury or Wrongful Death is Tax-Exempt: Should We Tell the Jury?, 14 De Paul L Rev 320; Feldman, Personal Injury Awards: Should Tax-Exempt Status Be Ignored?, 7 Ariz L Rev 272; Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St LJ 212, n 2; Comment, Personal Injury Awards and the Nonexistent Income Tax — What is a Proper Jury Charge?, 26 Fordham L Rev 98; 44 Ky LJ 384; Note, Consideration of Tax Aspects in Awarding Damages for Personal Injuries, 9 Vand L Rev 543; 50 Ky LJ 601; 4 UCLA L Rev 636; 25 Cin U L Rev 385; 11 Wash & Lee L Rev 66; 42 Ga LJ 149; 32 Tex L Rev 108; Opposing Instruction: Comment, Propriety of Comment on Non-Taxability of Personal Injury Verdicts, 21 U Chi L Rev 156; 35 NC L Rev 401; 42 Iowa L Rev 134; 8 Ark L Rev 174; 33 Boston U L Rev 114.